TOBEY VS. SECOR.

*March 22 — April 8, 1884.*

*Boundaries of land — Adverse possession — Ejectment.*

1. Where a dispute has arisen as to the boundaries of land, an attempt or negotiation by one party, after litigation is threatened, to purchase the land in controversy which he has held adversely for twenty years, is not a submission to the title of the other party and an abandonment of such adverse holding.

2. If two adjacent owners agree upon and establish a dividing line between their lands, and actually claim and occupy the land to that line on each side continuously for twenty years, their possession is adverse and creates title by prescription.

3. The holder of a school land certificate may maintain ejectment. Sec. 220, R. S.

APPEAL from the Circuit Court for *Racine* County.

Ejectment. The facts will sufficiently appear from the opinion. There was a verdict for the defendant, and from the judgment entered thereon the plaintiff appealed.

For the appellant there was a brief by *Fuller & Fuller*, and oral argument by *Mr. P. Fuller*.

For the respondent there was a brief by *Hand & Flett*, and oral argument by *Mr. Hand*.

ORTON, J. This is the common case of contest over the boundaries of land by adjoining owners. The evidence tended to show that both parties purchased their lands and went into the possession and occupancy thereof about the same time, and about thirty years ago, and that the defendant built line-fences on the lines denoted by the monuments then standing of the original government survey between his land and that of the plaintiff, and that afterwards the plaintiff, when he came into the possession of his land, joined with the defendant in building fences on the same lines, and they divided the fences between them as their respective shares or parts to be kept up and maintained in the same place and on the same lines by the parties. At one time the plaintiff set out a hedge on his portion of the line as a fence, and at another time he built a board fence on the same line. Both parties have occupied their lands according to the lines or boundaries indicated by such fences, and improved and cultivated the same, and acquiesced in such boundary lines, and believed that they were the true lines for a long time, and until a new survey was made by the county surveyor, in 1872, at the request of the plaintiff, and a new line established by such resurvey, and, even after that, and near the time of the commencement of this suit, the defendant had never been notified that the old lines had been changed by that survey. The parties have continued to occupy and enjoy their respective premises according to the old lines indicated by such fences nearly to the time of the commencement of this suit without question or controversy. By the survey of 1872, and a survey agreeing therewith made recently, there are two narrow and uneven strips, of less than one acre in all, of the land so occupied by the defendant, on the north and west of the plaintiff's land, which the plaintiff seeks to recover in this suit. In addition to such practical location of the division lines between the parties, there was evidence tending to show that the

fences built on such lines by them were placed upon the lines indicated by existing monuments of the government survey. This of itself might have justified the jury in rendering a verdict for the defendant, because, according to many cases in this court, such monuments must govern in such cases of subsequent controversy. But this question was not specially submitted to the jury by instructions.

The answer, after denying that the plaintiff was seized of these strips of land, or had any estate or interest in them, or that the defendant unlawfully withholds them, or that the plaintiff is entitled to the possession of them, sets up the defense of twenty years adverse possession and the statute of limitations. We have examined carefully the instructions of the court to the jury, and those asked by the plaintiff, and it seems to us that those given were unusually clear and correct, and embraced all of those asked by the plaintiff which ought to have been given. They were all in respect to the questions of adverse possession and the statute of limitations, ignoring all other defenses. Most of the instructions asked on behalf of the plaintiff were inapplicable to the case, there being no evidence to which they could apply. The instructions asked were to the effect that if the jury find that at any time since 1865 the defendant recognized the plaintiff's title to these strips of land by trying to purchase them from him, or that if the defendant negotiated for their purchase, then he did not hold adversely, and they must find for the plaintiff. There was some evidence by the son of the plaintiff that the defendant offered to buy these strips of land in 1882 of the plaintiff, but this the defendant denied, and there was some evidence that after this there was some talk between the parties about arbitrating the question of the lines. To make such an instruction proper on this evidence, the inference to be drawn from it must have been that the defendant thereby submitted to the title of the plaintiff, and yielded his claim to the land in dispute.

But such an inference would be most violent and unreasonable. Then, too, there was threatened litigation by the plaintiff, and the natural inference would be that the defendant wished to avoid such litigation, and made the offer for that purpose, if he made it at all. This is rendered the more probable by the subsequent talk of arbitration between them. It is very questionable whether this evidence should have affected the verdict one way or the other, and we do not think it error in the refusal of the court to so charge the jury, in view of the other evidence in the case which so clearly and conclusively showed that the defendant had held adversely for over twenty years, and that the plaintiff had not been seized or in the possession of the land in dispute for the same length of time or within the period of limitation of the action.

As to the main question of adverse possession, the authorities are uniform that if two adjacent or coterminous proprietors agree upon and establish a dividing line between their premises, and actually claim and occupy the land on each side of that line continuously for twenty years, such possession will be *adverse* and confer a *title* by prescription. *Bader v. Zeise*, 44 Wis., 96, and the authorities cited in the opinion. The learned counsel has cited numerous authorities from various states to the same effect, but there being no conflict of authority upon the question, I will not swell this opinion by their citation.

The only other remaining question discussed in the briefs of counsel is whether, conceding that these strips of land belonged to the plaintiff at any time within the last twenty years, he had such a title to it all that time that he could have brought ejectment to oust the defendant therefrom. The land was sold by the state as a part of the school lands, June 1, 1850, to one George Fancher, who received a certificate therefor, which certificate was assigned to the plaintiff November 8, 1854, and the plaintiff obtained a patent there-

on December 19, 1865. So, for a part of the last twenty years' possession of the defendant, the plaintiff held the land by this certificate. It is settled by the statute, as well as by the decisions of this court, that the plaintiff could have brought ejectment while holding only by this certificate, at any time. Sec. 20, ch. 24, R. S. 1849; sec. 51, ch. 28, R. S. 1858; sec. 220, R. S. 1878. These sections provide that the holder of the certificate has "the same rights of possession, enjoyment, descent, transmission, and alienation of the land therein described, and the same remedies for the protection of said rights as against all persons except the state, that he would possess if he were the owner thereof in fee." In *Gunderson v. Cook*, 33 Wis., 551, it is held under these statutes that the holder of a school land certificate may bring ejectment against a person in possession, even under a subsequent patent; and it was first so held that ejectment would lie, in *McGlone v. Prosser*, 21 Wis., 273. These authorities are conclusive, both as to the plaintiff's estate and interest in the land under his certificate and his right of action, and it would be a waste of time and space to cite other authorities on a point so plain by the statute.

We can find no error in the record, and we cannot doubt but that the jury rendered the proper verdict on the evidence. There is not likely to be much merit in such an action, between two old settlers and neighbors, who entered upon the possession, improvement, and enjoyment of contiguous wild land, for homes and farms, and did the best they then could to ascertain their boundary lines by the monuments then existing, and fixed and agreed upon the lines and built fences thereon and continuously occupied, cultivated, and improved the same accordingly for from thirty to forty years, by mutual acquiescence, and then one of them obtains a new survey and thereby finds his neighbor in possession on his side of the old fence of a little narrow strip of half an acre. In such a case new surveys, after all the ancient monuments

except the old fences are gone, are not to be encouraged, and they are very seldom correct.

*By the Court.*— The judgment of the circuit court is affirmed.