LAURIN and wife, Appellants, v. WYROSKI, Respondent.

*May 1—June 4, 1963.*

The cause was submitted for the appellants on the brief of *Phillips & Richards* of Kenosha, and for the respondent on the brief of *Vaudreuil & Vaudreuil* of Kenosha.

FAIRCHILD, J. The Kapinskis owned and occupied lot 18 from July 17, 1935, to July 10, 1950. At that time they conveyed lot 18 to Jean Luther, who was married to Alexander Wyroski about the same time. The Wyroskis occupied lot 18 until Mrs. Wyroski's death in June, 1956. Mr. Wyroski inherited the property and continued to occupy it.

The Laurins purchased and began to occupy the northerly portion of lot 19 in 1954.

There was testimony that at all times since 1935 there was a row of lilac bushes and other shrubs along line "B" and that the Kapinskis and Wyroskis occupied the land up to the line of bushes at all times. There was testimony that this use was never objected to nor interfered with until 1958. Although there was testimony on behalf of the Laurins that they made some use of the parcel as early as 1954 or 1955, the court does not appear to have believed it.

There was testimony that in June, 1956, Mrs. Wyroski made a statement to Mrs. Laurin and her daughter indicating that line "A" was the true boundary, and that she would have a boathouse moved so as to be entirely north of it. The circuit court correctly concluded that if title by adverse possession had already ripened, this statement would not change it.[1]

The Laurins contend on this appeal that the finding of adverse possession is contrary to the great weight and clear preponderance of the evidence. They claim that the activities of the Kapinskis and Wyroskis in the disputed area

---

[1] 1 Am. Jur., Adverse Possession, p. 885, sec. 163.

were insufficient in degree and character to constitute actual occupation and adverse possession.

The property was occupied as a summer home. Mr. Kapinski testified that he always considered the line of bushes as his boundary, and that he put in a new lawn and flower bed, seeding and planting up to that line. He took care of the grass and flowers and cleaned up the row of bushes. In 1936 he moved a boathouse into a location partly on the disputed parcel, and he laid pipes above ground near the line of bushes, using them during the summers to water the flowers. The Wyroskis continued to maintain the shrubs, lawn, and flowers in similar fashion.

Accepting the testimony as true, and drawing permissible inferences therefrom, there must have been plain notice to any observer that the Kapinskis and Wyroskis were using the disputed parcel as a part of their summer-home property and as their own.

In a recent case involving lake-cottage property we held that an owner's acts in removing brush and putting in a lawn in a parcel adjoining that which he owned was sufficient to constitute adverse possession.[2] We said, at page 138:

"Actual occupancy is not limited to structural encroachment which is common but is not the only physical characteristic of possession. Actual occupancy means the ordinary use of which the land is capable and such as an owner would make of it. Any actual visible means, which gives notice of exclusion from the property to the true owner or to the public and of the defendant's domination over it, is sufficient. . . .

"The statute requires 'usually cultivated or improved,' and if the cultivation or improvement in relation to the nature of the use in the area indicates the boundaries of the adverse claim and is usual under the circumstances, such use

---

[2] *Burkhardt v. Smith* (1962), 17 Wis. (2d) 132, 115 N. W. (2d) 540.

is sufficient and considered actual occupancy under the statute. 'Usually improved' means to put to the exclusive use of the occupant as the true owner might use such land in the usual course of events."

It is clear that the learned circuit judge had the correct rule in mind and that his finding of adverse possession is not against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.