MADSEN and wife, Respondents, v. HOLMES and wife, Appellants.*

*No. 191.  Argued November 29, 1972.—Decided January 30, 1973.*
(Also reported in 203 N. W. 2d 865.)

* Motion for rehearing denied, with costs, on March 27, 1973.

For the appellants there were briefs and oral argument by *James E. Quackenbush* of Madison.

For the respondents there was a brief by *William A. Melby* and *O'Melia, Kaye & Melby, S. C.,* all of Rhinelander, and oral argument by *William A. Melby.*

HANLEY, J. The following issues are presented by this appeal:

1. Are the findings of fact of the trial court with respect to defendants' acts of adverse possession against the great weight and clear preponderance of the evidence?

2. Are the defendants entitled to the disputed parcel of land under a theory of estoppel?

*Adverse possession.*

Since the defendants are not asserting title founded upon a written instrument or a judgment or any color of title, their assertion of title by adverse possession is controlled by sec. 893.08, Stats.,[1] and sec. 893.10 provides that such possession be for a period of at least twenty years. Sec. 893.09, defines what specific acts will constitute an adverse possession, and in material part provides as follows:

"893.09 **Adverse possession, what is.** For the purpose of constituting an adverse possession by a person claiming title, . . . land shall be deemed to have been possessed and occupied in the following cases only:

"(1) When it has been protected by a substantial inclosure.

"(2) When it has been usually cultivated or improved."

Because there is no claim by the defendant, Holmes, that the disputed property was "protected by a substantial inclosure," the adverse possession, if any, must arise because the land "has been usually cultivated or improved."

---

[1] Sec. 893.08, Stats., provides that: "When there has been an actual continued occupation of any premises under a claim of title, exclusive of any other right, but not founded upon any written instrument or any judgment or decree, the premises so actually occupied, and no other, shall be deemed to be held adversely."

Besides the general use of the property for seasonal recreation purposes, the specific acts of defendants and their predecessors in title which are relied on to demonstrate that the land "has been usually cultivated or improved" for over twenty years may be stated as follows: The grubbing out of the northern leg of the driveway and cottage site in the spring of 1946 by Joseph Larson who himself never acquired exclusive title to the disputed property until June of 1948, and some hunting and berry picking thereafter; the grubbing out of the southern part of the driveway by Joseph Larson in 1947; the original construction of the cottage by Freeman in 1950; the finishing off of the inside of the cottage by Preez in 1957; the grubbing out of a path through the woods between the cottage and the lake in 1958, which was thereafter dredged to form the water channel in 1959; and the building of a 10 x 16 foot addition onto the cabin by defendant in the fall of 1966.

The record shows that neither defendants nor any of their predecessors in title planted grass, trees or crops of any kind or has the land ever been filled-in in any way. Likewise, the only fence appearing on the land is one of about 12 feet in length which stands at the elbow of the driveway and which blocks off an old road, now abandoned by the county. The plaintiffs, at the request of the county, constructed this fence.

The cases relied on by the defendants are all easily distinguishable from the case at bar insofar as the nature of the activities occurring prior to twenty years before commencement of the suit, and which ". . . must be considered as the indicia of his actual occupancy." *Burkhardt v. Smith* (1962), 17 Wis. 2d 132, 135, 115 N. W. 2d 540.

In *Burkhardt*, the adverse possessor built a cottage, installed a septic tank, cleaned up his lot by cutting out all of the dead trees and all of the bramble and wild bushes which he stacked and burned together with all

of the dead stumps. Similarly, when he purchased the land it was as the disputed land is here, wild and unimproved, but there, unlike the acts of Joseph Larson, "[h]e spaded up the entire area which was covered with weeds, raked it, and seeded it with bluegrass." In *Laabs v. Bolger* (1964), 25 Wis. 2d 17, 130 N. W. 2d 270, the court compared the initial adverse acts there present to those in *Burkhardt*, saying at page 24 that:

"The other features of possession by the instant defendants present a stronger case for establishing adverse possession in the statutory sense than in the *Burkhardt Case*. Here, commencing in 1941, not only was fertilizer applied and grass seed sown, but the lawn was mowed to a definite line, the C–D line. Furthermore, the trees planted by defendants were placed on this line."

Similarly, in *Laurin v. Wyroski* (1963), 20 Wis. 2d 254, 121 N. W. 2d 764, there was a line of lilac bushes which indicated the boundary of the land on which the defendant was attempting to establish adverse possession. In addition, the defendants moved a boathouse onto the property in question. He put in a flower bed and seeded and planted the lawn over which he was attempting to assert his adverse claim. He also cleaned up the row of bushes that marked the boundary line and laid pipes on the ground and regularly watered flowers.

In the instant case, the most the defendants and their predecessors in title did, prior to the time the twenty-year statute ran, was to grub in a road to the location of the present cottage and the testimony on this aspect is in dispute. Marvin Larson testified the grubbing was done in 1947 and his sister testified that the grubbing was not done until 1950 or 1951.

We conclude that the trial court's determination was not against the great weight and clear preponderance of the evidence. It was the burden of the defendants to establish the claim of adverse possession on the part

of themselves or their predecessors in title. The trial court's conclusion that they failed to do so must be affirmed.

*Estoppel.*

Defendants argue under several different theories that plaintiffs should be estopped from asserting ownership to the property at this time. Plaintiffs contend that because defendants never raised estoppel until the submission of their brief at the close of trial, they should now be precluded from having this court review their contentions with regard to it.

The general rule is that ". . . estoppel must be pleaded when the party relying upon it has an opportunity to plead it. Usually, when estoppel is a matter of defense, it must be raised by answer." *Schneck v. Mutual Service Casualty Ins. Co.* (1963), 18 Wis. 2d 566, 571, 119 N. W. 2d 342. It is also well settled, however, that "[w]here the facts showing estoppel are in issue and a part of the case made by the pleadings, and the evidence showing estoppel is admissible for any purpose under the pleading, estoppel is available as a defense without being specially pleaded." *George J. Meyer Mfg. Co. v. Howard Brass & Copper Co.* (1945), 246 Wis. 558, 581, 18 N. W. 2d 468. We think, under the facts of this case, defendants were not required to plead estoppel and that the issue is, in fact, properly before the court.

Defendants' first allegation is that the plaintiffs are bound by the knowledge and representations of their grantor, Louis Larson, in his dealings with defendants' predecessor, Joseph Larson. This rule is set forth in the case of *Moran v. Burmeister* (1933), 211 Wis. 669, 677, 247 N. W. 873, and it is clear from this case that in order for the plaintiffs to be so bound, they must have known at the date of their purchase of the land " '. . . the facts which operate as a bar to the claim of

[their] grantor to the land conveyed . . . .' " It is undisputed that everyone in both chains of title were in error as to the actual boundary and the requisite *knowledge* is not present.

Defendants' second allegation of estoppel is that when a long-continued possession of land up to a line has been acquiesced in by all interested parties, the boundary thereby established becomes permanent and binding on the parties. The rule to which defendants refer was set forth most recently in *Buza v. Wojtalewicz* (1970), 48 Wis. 2d 557, 180 N. W. 2d 556. It is stated at page 565:

". . . where there is a dispute as to the location of boundary line resulting in an agreement between the owners establishing such disputed line, and a fence is located on such line so established by agreement, which is long acquiesced in by such adjoining owners, these facts are conclusive as to the location of the line, even though the period of acquiescence may fall short of twenty years."

In the instant case, there is no evidence of a dispute other than immediately prior to the commencement of the action let alone an agreement between the parties establishing a boundary line thereafter.

Defendants' final contention is that because their grantor had represented the boundary to be 15 to 20 feet west of the cabin and had so walked it with him and because there was disputed testimony to the effect that plaintiff walked the same line, this line must be conclusive as between the parties. The general exception to the twenty-year period which defendants now refer to was first set forth in *Thiel v. Damrau* (1954), 268 Wis. 76, 81, 66 N. W. 2d 747, and which was recently relied on by this court in *Buza, supra,* at pages 565, 566. With facts almost identical to those in the case at bar, the court stated:

". . . [I]n *Thiel v. Damrau* . . . the court said:

" ' . . . where adjoining owners take conveyances from a common grantor *which describe the premises conveyed by lot numbers,* but such grantees have purchased with reference to a boundary line then marked on the ground, such location of the boundary line so established by the common grantor is binding upon the original grantees and all persons claiming under them, irrespective of the length of time which has elapsed thereafter.' (Emphasis supplied.)

"Woljtalewicz cannot qualify for the *Thiel* exception to the twenty-year rule because the common grantor in the case at bar, John Bukowski, did not convey by 'lot numbers' as was done by the common grantor in *Thiel.* Bukowski conveyed by metes and bounds. In *Thiel,* the location of the boundary line was not described in the deed, hence resort to evidence outside the deed to find the boundary's location was allowed; and the fence was such evidence."

Here, the metes and bounds descriptions of the two parcels in the deeds were specific, and consequently, there was no need to resort to any extrinsic evidence, particularly where such evidence is subjective and based upon the disputed testimony of where the parties once walked some time ago.

We conclude that plaintiffs cannot be estopped from asserting their true boundary lines.

*By the Court.*—Judgment affirmed.