ALLIE, Plaintiff-Respondent, v. RUSSO, and others, Defendants-Appellants.

Supreme Court

No. 76–587. *Submitted on briefs February 28, 1979.—Decided March 27, 1979.*
(Also reported in 276 N.W.2d 730.)

For the appellants the cause was submitted on the brief of *Thomas G. Hetzel* and *Hetzel & Decker* of Kenosha.

For the respondent the cause was submitted on the brief of *L. E. Vaudreuil* and *Vaudreuil & Vaudreuil* of Kenosha.

CONNOR T. HANSEN, J.   In setting forth the facts, reference is made to a survey made by Robert L. Smith, registered land surveyor, which was received in evidence at trial.

PUBLIC ALLEY

IRON PIPE

OLD IRON PICKET FENCE AS LOCATED ON 8/7/74. FENCE REMOVED PRIOR TO 10/5/75.

NEW CHAIN LINK FENCE ALONG SOUTH EDGE OF WALK.... LOCATED ON 10/5/75.

52

OLD CONCRETE WALK

53

N

NOT TO SCALE

ALLIE PROPERTY

DWLG.

DWLG

LOT LINE

LINE OF OLD FENCE EXTENDED WEST

CHISEL CUT IN WALK

25TH

AVE.

PUBLIC ALLEY

The respondent acquired title to Lot 52 in 1942, and has occupied the premises continuously since that date. Sometime subsequent to 1942, one Larsen apparently acquired title to Lot 53. In 1962, the appellants commenced occupancy of the dwelling located on Lot 53 and in 1972, the appellants purchased the property and were still occupying the premises at the time of trial. Both lots are bordered by 25th avenue on the west and each abuts a public alley on the east. Immediately adjacent to and south of Lot 53, the lot owned by the appellants, is another public alley.

This dispute arose during the summer of 1974, when the appellants decided to enclose their backyard with a chain-link fence to contain their show dogs. In so doing they removed an old fence which separated the backyards of the parties. This old fence ran generally along the south side of the old concrete walk shown on the survey. The new chain-link fence made two changes in reference to the old fence it replaced. At the east, or alley end, the fence was moved six to eight inches to the north and closer to the old concrete walk. The new fence then continued west along the south side of the walk to the place where the old fence ended. The west end of the old fence was at a point approximately in line with the rear of the dwelling on the respective lots. Near the west end of the old fence was a gate, so hinged to swing either way. The gate latched but had no lock. The new fence eliminated this gate.

Upon completion of the new fence, the respondent commenced this action pursuant to sec. 281.02(1), Stats. 1971, now sec. 893.10(2), to acquire title by adverse possession to a parcel of land which is a part of Lot 53, owned by the appellants, but which lies north of the old fence.

On the east, or alley, boundary of the two lots is an iron pipe that purportedly marks the east corner of the adjoining lots. Due west of the iron pipe is a chisel

mark in the sidewalk on 25th avenue which appears to mark the west corner of the two lots. As the Smith survey depicts, the old concrete walk commences at the alley on the east and as it continues west, the lot line established by the iron stake near the alley and chisel mark in the 25th avenue sidewalk actually runs through this old sidewalk. The walk is about 1.5 feet wide and the old fence was south of the walk. It is undisputed that the old fence was located on Lot 53, the lot owned by the appellants.

Not shown on the Smith survey are other old walks on the two properties. At the place where the gate was located near the west end of the old fence, a walk continues north, past the rear of the respondent's house, to the north side of the house, then turns west and continues to 25th avenue.

Also from the gate near the west end of the old fence there is a walk that goes south from the gate across Lot 53, owned by the appellants, to the alley on the south side of the appellants' property. Also on appellants' lot is a walk which extends west along the north side of the appellants' house from the north-south walk behind the house to the 25th avenue sidewalk. The old fence did not continue between the houses or extend into the front yards.

At the east or alley end of the old fence there was also a gate. This gate was hinged to the respondent's garage and latched, but not locked, on the easternmost fence post of the old fence. This gate was not affected by the new fence because the appellants left the old easternmost fence post in place.

Thus when the old fence was in place there was a narrow strip of land along the south side of the old concrete walk. This strip of land measured a few inches at the west end of the old fence and about one foot at the east or alley end of the old fence. When the new fence was installed the west end was in approximately

the same place as the old fence but the east or alley end of the fence was six to eight inches closer the south side of the old concrete walk. What this really amounts to is that the east end of the old fence was two feet south of the iron pipe and the east end of the new fence is now 1.33 feet south of the iron pipe.

Appellant, Janice Russo, testified the new fence was moved six to eight inches north of the old fence at the east end because at that point the old fence had become embedded in a tree. She also said they did not put the new fence on the lot line because they would have to tear up the sidewalk to do so.

The surveyor testified that at the east end there was a variance from the old fence post of six inches to the fence wire and of eight inches to the new concrete post base. The surveyor said the new fence was 1.33 feet south of the lot line at the east end and 1.3 feet south of the lot line at the west end.

Respondent testified that she had always thought that the old fence marked the property line. She said she had maintained the strip of land between the fence and the sidewalk by planting flowers and foliage and by weeding. She said they had never thought it necessary to have the lot surveyed. She said they were good friends with the Larsens and had never stopped them from using the sidewalk to the alley. She said she had used the west gate to reach the south side of her house to wash windows. She denied that the appellants had used the sidewalk to reach the alley and said Janice Russo only used the gate occasionally to come see her or get her dog or cat out of the yard. She said Russo planted flowers only on the south side of the fence. She said she first told the appellants that she owned the sidewalk at the time of the fence dispute.

Janice Russo said she knew the fence was on her lot when she purchased it because Larsen had told her the sidewalk was the lot line. In response to questions

by the trial court she said she had never objected to the presence of the fence because she knew it was hers and until now had never been given any reason to point that out. She said respondent first made her claim known after objecting to the fact that the new fence would not have a gate. Russo testified they used the west gate to reach the alley and that respondent never attempted to stop them. Nor did they attempt to stop respondent from using the sidewalk. She said both they and respondent had used the gate many times. Russo said she used the sidewalk to weed along the north side of the fence. She said she had planted half the flowers on the north side of the fence. She testified Rudi Russo had repaired the fence once and that her son occasionally shoveled the walk.

No evidence was introduced regarding the chain of title of either lot, the origin of the original fence, the date of the construction of the sidewalk or the placement of iron pipe or chisel mark in the 25th avenue sidewalk. It would appear the sidewalk, fence and lot corner marks were all in existence when the respondent and her husband, now deceased, purchased Lot 52 in 1942.

The trial court made the following findings of fact pertinent to this appeal:

"7. That at the time of the purchase of said property an existing fence line and line of occupation indicated the limits of Lot 52, and that from the date of the purchase of said property and the occupation thereof the plaintiff considered the boundary of the above-described Lot 52 to be marked by the existing fence and a continuation of the fence line extending from the west end of said fence to a point one foot south of the southwest corner of said Lot 52.

". . . .

"9. That this plaintiff has been in uninterrupted adverse possession of the parcel of real estate described in the preceding paragraph since June of 1942, and that the fence referred to above was in existence prior to the plaintiff acquiring any title to said Lot 52.

"10. . . . That the fence removed by defendants had been in existence for more than 32 years, and had been considered by other occupants of the respective properties as being the north line of the property now owned and occupied by the defendants. That the area in dispute and north of the said old fence line and the extension thereof was used and maintained during the entire 32 years by this plaintiff.

"12. That the defendants have erected a fence along the south line of said Lot 52 and have thereby deprived the plaintiff of her use of the property hereinbefore described. . . ."

The trial court concluded that the respondent had acquired title by adverse possession to a part of Lot 53, owned by the appellants. The parcel of land is the north part of Lot 53. The judgment describes the disputed parcel as follows:

"Commencing at the southeast corner of Lot 52 . . . , thence running south for a distance of two (2.0) feet; thence in a westerly direction to a point one (1.0) foot south of the Southwest corner of said Lot 52, thence east along and upon the south line of Lot 52 to the point of beginning, . . . ."

This parcel included that portion of appellants' front yard which would be bounded by an extension of the old fence to the front lot line. The trial court ordered the appellants to relocate the new fence on the original fence line.

This appeal presents the following issues:

1. Whether the evidence supports the conclusion of the trial court that the respondent acquired title to the land by adverse possession?

2. Whether the evidence supports the conclusion of the trial court that the new fence on the north side of the appellants' property must be relocated on the old fence line?

The sole test of adverse possession is the physical character of the possession. *Progress Blue Ribbon Farms v. Harter*, 147 Wis. 133, 137, 132 N.W. 895 (1911) ; *Ovig v. Morrison*, 142 Wis. 243, 248, 125 N.W. 449 (1910). This physical possession must be hostile, open and notorious, exclusive and continuous for the statutory period. *Burkhardt v. Smith*, 17 Wis.2d 132, 139, 115 N.W.2d 540 (1962) ; *Mielke v. Dodge*, 135 Wis. 388, 391, 115 N.W. 1099 (1908). Sec. 893.09, Stats., provides:

". . . For the purpose of constituting an adverse possession by a person claiming title, not founded upon some written instrument or some judgment or decree, land shall be deemed to have been possessed and occupied in the following cases only:

"(1) When it has been protected by a substantial inclosure.

"(2) When it has been usually cultivated or improved."

The respondent's claim of adverse possession is not based on a written instrument and therefore possession must continue for a period of twenty years. Sec. 893.10(2), Stats.

The burden of proof is on the one asserting the claim. *Madsen v. Holmes*, 57 Wis.2d 148, 155, 203 N.W.2d 865 (1973). The evidence of possession must be clear and positive and must be strictly construed against the claimant. All reasonable presumptions must be made in favor of the true owner. *Zeisler Corp. v. Page*, 24 Wis.2d 190, 198, 128 N.W.2d 414 (1964) ; *Bettack v. Conachen*, 235 Wis. 559, 566, 294 N.W. 57 (1940) ; and *Lindokken v. Paulson*, 224 Wis. 470, 475, 272 N.W. 453 (1937).

". . . In order to constitute adverse possession against the title of the true owner, an adverse claim must be sufficiently open and obvious, both as to the fact of possession and its real adverse character, to apprize the true

owner if in charge of the property and in the exercise of reasonable diligence of the fact and of an intention to usurp the possession of that which in law is his own. . . ." *Bettack, supra,* at 566.

There must be actual visible means by which notice of the intent to exclude is given to the true owner. *Burkhardt, supra,* at 138.

In *Mielke v. Dodge, supra,* rebuilding a fence was found to be a hostile act and one who builds a fence can assert that such was an *act* of adverse possession. In the instant case there is no evidence as to when the old fence was built or who built it. Rather the respondent claims that the evidence of her possession of the land up to the old fence has been hostile, open and notorious, exclusive and continuous for more than 20 years. There is no question that respondent has owned Lot 52 for more than 20 years. Further it has been held that possession up to a preexisting fence constitutes an act of adverse possession. *See, e.g., Donahue v. Thompson,* 60 Wis. 500, 19 N.W. 520 (1884), and *Tobey v. Secor,* 60 Wis. 310, 19 N.W. 99 (1884).

In the case here under consideration, the respondent asserts that her possession up to the old fence line constitutes the required hostile act. The respondent relies on *Donahue v. Thompson, supra,* and *Tobey v. Secor, supra.* However, these two cases hold that continuous occupation by adjoining property owners to a mutually agreed-up dividing line for 20 years is mutually adverse. But here there is no evidence that the old fence was ever mutually agreed upon as the boundary by either present or prior owners of Lots 52 and 53. Likewise, the appellants incorrectly attempt to apply cases holding that an agreement between adjoining property owners to settle a dispute by establishing a boundary line will be treated as a mistake where the true line could be ascertained by deed or survey. *See, e.g., Schimmel v. Dundon,* 1 Wis.2d 98, 83 N.W.2d 143 (1957) ; and *Hartung v.*

*Witte,* 59 Wis. 285, 18 N.W. 175 (1884), which do not involve a claim of adverse possession. Further, in the instant case, there is no evidence that the fence was established as a boundary line by mutual agreement to settle a dispute.

In *Menzer v. Tracy,* 247 Wis. 245, 19 N.W.2d 257 (1945), acquiescence by the true owner to the existence of a garden and building on the disputed parcel was sufficient to show adverse possession. Similarly in *Northwoods Development Corp. v. Klement,* 24 Wis.2d 387, 129 N.W.2d 121 (1964), adverse possession was established where the true owner believed that the fence placed by his predecessor in title lay on the boundary and therefore did not object to his neighbor's use of the enclosed parcel as pasture. In both of these cases the acts of possession were obvious to everyone and the true owner did not attempt to use the disputed parcel during the statutory period.

In *Bettack v. Conachen, supra,* no adverse possession was found where the evidence disclosed that both parties had been in possession of the disputed strip at various times during the statutory period. The court explained:

". . . While his testimony of course is not conclusive, Conachen testified that he did not object to the Bettacks' use of this land until recently because he did not know they were using it. . . Before one neighbor can acquire title by adverse possession of property belonging to another he must do something which clearly brings home to his neighbor the fact that he intends to claim the property against his neighbor and the world. If the Bettacks had built a fence on what they now claim to be the south line and had occupied the premises up to that fence, the erection of the fence and occupation of the premises would be a sufficient declaration of such intention, but a mere dispute as to the location of the true boundary accompanied by acts which do not exclude the neighbor from possession do not give notice to the neighbor of any hostile intent or any purpose to exclude the neighbor from his customary possession of the premises. The

plaintiffs are met at the threshold of their claim by the presumption that Conachen is in possession of the lands described in his deed. To overcome that presumption there must be something which shows they intended to exclude him therefrom. The only act of exclusion was the erection of the garage about 1928." *Id.* at 569, 570.

Similarly, in *Cuskey v. McShane,* 2 Wis.2d 607, 87 N.W. 2d 497 (1958), adverse possession was not found because the evidence disclosed that both parties had performed various acts of possession on the disputed strip. The court said the only act of exclusion was the claimant's building a fence only a couple years prior to the action. In *Madsen, supra,* the court found that putting a road, cabin and water channel on a wooded lake lot used for recreational purposes did not show "cultivation or improvement" sufficient to establish adverse possession.

*Herzog v. Bujniewicz,* 32 Wis.2d 26, 145 N.W.2d 124 (1966), involved facts somewhat similar to the present case, where ownership to a one-and-one-half foot strip of land between adjoining lots in Kenosha was in dispute. The court said that evidence that within the past thirty years the claimant had used a gravel driveway which lay partially on the disputed strip and had weeded the area was insufficient to prove use, cultivation or improvement exclusively for the claimant's benefit. Nor were these acts of such a nature as to give notice of her exclusive dominion to the true owner or the public. Adverse possession was ultimately found in *Herzog* because the claimant was allowed to introduce evidence of acts of possession more than thirty years before the action was brought and because "[f]rom the evidence one can reasonably conclude the defendant considered this disputed strip as belonging to the plaintiff. . . ." *Id.* at 33. There is nothing in this record from which it could be concluded that the appellants ever considered the disputed strip belonged to the respondent.

In *Burkhardt, supra,* at 138, the court defined actual occupancy to mean the ordinary use of which the land is capable and such as an owner would make of it. The court also said exclusiveness of possession meant whether the claimant was the only one using the land. Such is not the case here. The respondent testified that she considered she owned the land up to the old fence, while the appellant testified Larsen, her predecessor in title, told her the lot line ran through the old concrete walk.

The findings of fact of the trial court must stand unless they are against the great weight and clear preponderance of the evidence. The trial court here found that the existing fence line and line of occupation indicated the limits of Lot 52. Because there is no evidence as to when the fence and sidewalk were built, why, or by whom, there is nothing on which to base such a finding. The subjective intent of either of the parties is irrelevant to a determination of a claim of adverse possession. *Mielke v. Dodge, supra,* at 394; *Ovig v. Morrison, supra,* at 247; *Bettack v. Conachen, supra,* at 564, 565. This portion of finding of fact No. 7 must fall, leaving only the well-supported finding that respondent considered the fence to be the lot line. Similarly the finding which says that the fence was considered by others to be the lot line must also fall. There is no evidence that anyone other than the respondent and her lawyer considered the fence to be the lot line. The appellants did not consider the fence to be the lot line and the only evidence concerning a former occupant was Janice Russo's testimony that Holger Larsen told her the sidewalk was the lot line. The portion of finding of fact No. 10 which says that appellants removed the old fence is undisputed.

Finding of fact No. 9, that respondent has been in uninterrupted adverse possession since 1942, is a conclusion

of law. The only factual finding which supports this conclusion is the portion of finding No. 10 which says that respondent used and maintained the area north of the fence for thirty-two years. Evidence to support this finding consists of respondent's testimony that she used the sidewalk, planted flowers and weeded along the fence. There is no finding that this use was exclusive, nor could there be unless all of appellants' testimony was believed incredible and the physical evidence of an unlocked gate facing appellants' back door which opens over a sidewalk leading both to appellants' back door and the street in front of their house is ignored.

Appellants' testimony is that they knew the old fence was on their property. It is patently clear that they had no reason to suspect the respondent's claim of adverse possession until after the new fence had been constructed with the attendant elimination of the gate that was in the old fence. The appellants presented their own evidence that they planted and weeded north of the fence, repaired the fence and used and shoveled the sidewalk. We conclude the finding of exclusive possession, implicit in the trial court's conclusion of law, is against the great weight and clear preponderance of the evidence.

We believe the only way to sustain the conclusion of the trial court would be to hold that the respondent acquired title to part of Lot 53 prior to the time the appellants occupied Lot 53. Respondent purchased Lot 52 in June, 1942, and appellants began to rent Lot 53 sometime in 1962. However, respondent herself testified repeatedly that the Larsens used the sidewalk and that she neither gave them permission nor prevented their use. Russo's testimony that Larsen told her the sidewalk was the lot line reflects that Larsen knew the extent of his property. Therefore, respondent's possession of the disputed strip was not exclusive during the Larsens' occupancy.

The trial court granted the respondent adverse possession of that portion of appellants' front yard which would be enclosed by an extension of the fence to the front sidewalk. No authority is cited by the trial court or the respondent for such a result. Sec. 893.08, Stats., provides:

". . . When there has been an actual continued occupation of any premises under a claim of title, exclusive of any other right, but not founded upon any written instrument or any judgment or decree, *the premises so actually occupied, and no other,* shall be deemed to be held adversely." (Emphasis added.)

*In Bettack, supra,* at 566, this court said:

"Where the true owner is in actual possession of a part of the land claiming title to the whole he has the constructive possession of all the land not in the actual possession of the intruder. . . ."

The respondent presented no evidence relating to her use, maintenance or occupancy of this strip of land in the front yard.

Finally, after awarding the respondent title to the disputed strip by adverse possession, the trial court ordered the appellants to relocate the new fence on the old fence line. Since we conclude the findings of the trial court in regard to adverse possession are against the great weight and clear preponderance of the evidence and reverse the judgment, that portion of the judgment is of no effect. The evidence of the use of the sidewalk and the disputed strip of land by the respondent does not constitute open, notorious and exclusive use of property as is necessary to acquire title by adverse possession.

*By the Court.*—Judgment reversed.