Anthony E. LECIEJEWSKI and Susan M. Leciejewski, his wife, Plaintiffs-Appellants,

v.

Frank C. SEDLAK and Vi Sedlak, his wife, Defendants-Respondents.†

Court of Appeals

*No. 82–338. Submitted on briefs October 25, 1982.—Decided December 21, 1982.*
(Also reported in 329 N.W.2d 233.)

† Petition to review granted. CECI, J., took no part.

338

For the appellants the cause was submitted on the briefs of *Santini, Jacobs, McDonald & Silc, P.C.,* and *Michael F. Fauerbach* of Ashland.

For the respondents the cause was submitted on the brief of *Spears and Carlson* and *Jack A. Carlson* of Washburn.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J.  Anthony and Susan Leciejewski appeal from a judgment granting Frank and Vi Sedlak title by adverse possession to a parcel of land that the Leciejewskis acquired from the county following a tax lien foreclosure.  The Leciejewskis contend that the trial court erred in finding that the Sedlaks' possession was adverse.  The Leciejewskis additionally assert that any rights in the parcel the Sedlaks may have acquired by adverse possession were lost due to a judgment foreclosing a tax lien on that land.  We conclude that the trial court's factual findings relating to adverse possession are not against the great weight and clear preponderance of the evidence.  Because we also conclude that the judgment of foreclosure bars the Sedlaks' claim of ownership to the parcel, however, we reverse.

In 1946, Timothy and Olga Faley purchased from Ruth Mary Gore a parcel of land located in Bayfield County.

This transaction was subsequently recorded in the county register of deeds' office. The Faleys conveyed to Frank Sedlak a portion of that land by warranty deed, which was recorded in 1952. In 1954, the Faleys executed a second warranty deed to Sedlak, which contained a different description of the conveyed parcel than the description in the first deed. This deed was also recorded. In 1956 Rollie and Ruth Mary Gore executed a quitclaim deed to Sedlak, which was recorded. The description of the property in this deed is the same as the description in the 1954 deed from the Faleys to Sedlak. In 1960, Mrs. Faley executed and recorded a quitclaim deed to her daughter, Bonnie Lee Dyer, of the land the Faleys had purchased in 1946, less parcels previously conveyed to Sedlak. Dyer later conveyed a portion of her land to Bayfield County by quitclaim deed.

A delinquency subsequently arose with respect to real estate taxes assessed to Dyer. Bayfield County began proceedings to foreclose its tax lien on the property under an ordinance adopted pursuant to sec. 75.521, Stats. The county mailed a copy of the foreclosure petition and relevant part of the list of tax liens to Dyer, the record owner of the assessed land, to her last known address, as required by sec. 75.521(3) (c), Stats.[1] A notice of the

[1] Section 75.521(3) (c), Stats., provides:

A copy of the petition and so much of the list of tax liens as shall include the description of a particular parcel shall be mailed by registered or certified mail, return receipt requested, by the county treasurer to the last-known post-office address of each owner and mortgagee of record, the state of Wisconsin in the instances specified in sub. (3)(a)2, and to each municipality, other than the municipal taxing district foreclosing, having any right, title or interest in the land or in the tax liens or the proceeds thereof. An affidavit of the treasurer setting forth the names of the owners, mortagees, the state of Wisconsin in the proper case and municipalities for whom a post-office address has been ascertained, giving the addresses and stating that notice was mailed, giving the date of mailing, and stating that no pres-

tax lien proceedings was also published in accordance with sec. 75.521(6), Stats.[2] On April 26, 1976, judgment was granted, which had the effect of the issuance of a tax deed to the county. Section 75.521(13)(b), Stats. The judgment also transferred to the county title to property described according to the description in the deed from Gore to the Faleys, less those parcels previously conveyed to Sedlak in 1952 and to Bayfield County.

On July 25, 1978, the county conveyed the property by quitclaim deed to the Leciejewskis. When Anthony Leciejewski inspected the property, he found a house and storage shed on the land. There was also a cabin on the southwest corner of the property and a boathouse south of a channel running into the property. He later discovered that the Sedlaks had used and continued to use a portion of the property located on the south end of the channel.

The Leciejewskis filed a motion for summary judgment, alleging that the Sedlaks were trespassing on their land. The Leciejewskis also requested a judicial confirmation that they own all land in dispute. The trial court denied the motion on the ground that there remained disputed issues of material fact concerning whether the Sedlaks acquired ownership of the disputed portion of land through adverse possession. The court also held that if the Sedlaks had fulfilled the require-

ent post-office address was ascertainable for the other owners and mortgagees, shall be filed and constitute full compliance with this paragraph.

[2] Section 75.521(6), Stats., provides, in part:

Public Notice of In Rem Proceeding. Upon the filing of such list in the office of the clerk of the circuit court, the county treasurer forthwith shall prepare a notice that such list of tax liens and petition has been so filed and a copy thereof posted in the office of said county treasurer. The treasurer shall cause such notice, together with the list of tax liens and petition, to be published as a class 3 notice, under ch. 985.

ments of adverse possession, their claim of title would not be barred by the 1976 in rem tax lien foreclosure proceeding.

The Leciejewskis subsequently filed a motion for reconsideration. After a trial to the court, the court found that since the summer of 1955, the Sedlaks had engaged in acts on the disputed land sufficient to constitute adverse possession under sec. 893.25, Stats.[3] The court also reaffirmed its earlier findings and decision on the Leciejewskis' motion for summary judgment and awarded the Sedlaks title to the disputed property.

### Adverse Possession

The Leciejewskis contend that the evidence does not support the trial court's finding that the Sedlaks adversely possessed the disputed property pursuant to sec. 893.25. The Leciejewskis assert that the Sedlaks used the property with the Faleys' and Dyer's permission, and therefore their use could not be adverse. *See Ludke v. Egan*, 87 Wis. 2d 221, 230, 274 N.W.2d 641, 646 (1979).

---

[3] Section 893.25, Stats., provides:

Adverse possession, not founded on written instrument. (1) An action for the recovery or the possession of real estate and a defense or counterclaim based on title to real estate are barred by uninterrupted adverse possession of 20 years, except as provided by s. 893.14 and 893.29. A person who, in connection with his or her predecessors in interest, is in uninterrupted adverse possession of real estate for 20 years, except as provided by s. 893.29, may commence an action to establish title under ch. 841.

(2) Real estate is possessed adversely under this section:

(a) Only if the person possessing it, in connection with his or her predecessors in interest, is in actual continued occupation under claim of title, exclusive of any other right; and

(b) Only to the extent that it is actually occupied and:

1. Protected by a substantial enclosure; or

2. Usually cultivated or improved.

The Sedlaks base their claim of adverse possession on sec. 893.25, which provides that an action for the recovery of real estate is barred by uninterrupted adverse possession for twenty years. Adverse possession under this provision requires enclosure, cultivation or improvement of the land. Section 893.25(2), Stats. The sole test of adverse possession is the physical character of the possession. *Allie v. Russo,* 88 Wis. 2d 334, 343, 276 N.W.2d 730, 735 (1979). The physical possession must be hostile, open and notorious, exclusive and continous for the statutory period. *Id.* "Hostility" for purposes of showing adverse possession means only that one in possession claims exclusive right to the land possessed, and actual possession prevents the assumption that the true owner is in possession. *Burkhardt v. Smith,* 17 Wis. 2d 132, 139, 115 N.W.2d 540, 544 (1962).

The trial court's factual findings on the issue of the Sedlaks' adverse possession will be sustained on appeal unless they are contrary to the great weight and clear preponderance of the evidence. *Pierz v. Gorski,* 88 Wis. 2d 131, 136, 276 N.W.2d 352, 354–55 (Ct. App. 1979). Findings of fact will not be reversed merely because there is evidence to support contrary findings. *See Milbauer v. Transport Employes' Mutual Benefit Society,* 56 Wis. 2d 860, 862–63, 203 N.W.2d 135, 137 (1973). We will affirm the court's findings unless a finder of fact, properly applying the law, could not reasonably have concluded that the adverse possessor met his burden of proof, *Pierz,* 88 Wis. 2d at 136, 276 N.W. 2d at 355.

The trial court's findings in this case are adequately supported by the evidence. Certain testimony at trial indicates that the Sedlaks continuously improved and cul-

tivated the disputed property from 1955 to the time the Leciejewskis commenced this action. Sedlak testified that he planted trees in 1956, 1957, and 1958. Sedlak also has mowed the strip of land east of the channel since at least 1956 or 1957, and he planted a garden in that area. Sedlak constructed a shed on the property in 1953, and a horse barn in 1953 or 1954, which he converted to a cabin between 1968 and 1970. In 1955, Sedlak built a fence and a boathouse. Sedlak also engaged in considerable brushing and clearing of trees and weeds on the disputed portion of the property. These activities were open, notorious, and sufficiently visible to give the Faleys and Dyer notice that the Sedlaks intended to exclude them from possession of the disputed property. *See Allie*, 88 Wis. 2d at 343, 276 N.W.2d at 735. Various acts of improvement and cultivation of the land also continued uninterrupted for the requisite twenty-year limitations period. Although there was conflicting testimony regarding the dates on which some of these activities occurred, the credibility of the witnesses and the weight to be given their testimony are matters for the trial court's determination. *See Estate of Glass*, 85 Wis. 2d 126, 135, 270 N.W.2d 386, 391 (1978).

The fact that Sedlak received permission from the Faleys to build the chicken shed and to dynamite part of the property does not mean that the Sedlaks' possession of the land was not adverse. As previously noted, the Sedlaks engaged in several other activities that improved and cultivated the disputed property as early as 1955, and evidence adduced at trial does not indicate that they either requested or received permission from the Faleys or Dyer to perform these acts. Frank Sedlak additionally testified that he did not need permission to build other buildings on the land because the property was his.

The Leciejewskis argue that the trial court erred in excluding Warren and Adella Davis' testimony concerning their prior boundary disputes with the Sedlaks. The Leciejewskis contend that the testimony was relevant to the issue of Sedlak's credibility because Sedlak previously testified that he had no such disputes. The Leciejewskis also assert that the testimony is relevant to the issue of whether Sedlak had notice that the land to which he claimed ownership was subject to the tax lien foreclosure.

The trial court did not err in excluding this evidence. The testimony is irrelevant to the issue of whether Sedlak knew where the boundaries of the land to which he claimed ownership were in relation to the boundaries of the land belonging to the Faleys and Dyer and therefore whether Sedlak had notice of what property was subject to the foreclosure. The fact that it is offered for impeachment purposes does not render it admissible as evidence because a witness may not be impeached on collateral issues. *Tobar v. State,* 32 Wis. 2d 398, 405, 145 N.W.2d 782, 786 (1966).

*Effect of Tax Lien Foreclosure*

The Leciejewskis contend that the trial court erred in holding that the judgment of foreclosure did not bar the Sedlaks' claim of ownership to the disputed parcel. We have not found nor have the parties cited any Wisconsin cases that address the effect of the in rem tax lien foreclosure proceeding on a defense of property ownership asserted under sec. 893.25. Other jurisdictions, however, have considered the issue of whether title acquired after a tax lien foreclosure defeats a claim of ownership based on adverse possession or a possessory interest. When the claimant under adverse possession

has not satisfied the required limitations period prior to a tax lien foreclosure, some jurisdictions have held that the foreclosure interrupts the running of the limitations period for adverse possession,[4] while other jurisdictions have reached the opposite conclusion.[5]

Where, as here, the claimant has satisfied the applicable limitations period for adverse possession prior to a tax lien foreclosure,[6] some jurisdictions have held that the foreclosure does not affect the claimant's interest in the land, and that interest defeats a claim of title by one who purchased the land from the governmental entity that acquired title pursuant to the judgment of foreclosure.[7] The rationale for this holding is that by the forfeiture, the county only acquired, and could therefore only pass on, the landowner's title and interest not lost by adverse possession. *See, e.g., Mount v. Curran,* 631 P.2d 496, 498 (Alaska 1981); *Reusens v. Lawson,* 21 S.E. 347, 352 (Va. 1895). Other jurisdictions have held, however, that issuance of a valid tax deed creates a virgin title that erases all prior claims of title and possessory or other interests.[8] In states having in rem proceedings for tax lien foreclosures, the rationale for reaching the second conclusion is that because of the in rem proceeding, the foreclosure necessarily vests in the purchaser of a tax deed or his assignee a new title

---

[4] *See, e.g., Lyndel Corp. v. Loria,* 77 Misc. 2d 1066, 355 N.Y.S.2d 699 (New York 1973).

[5] *See, e.g., Goldman v. Quadrato,* 114 A.2d 687 (Conn. 1955).

[6] The trial court found that the Sedlaks had engaged in activities constituting adverse possession since the summer of 1955. The judgment foreclosing the tax lien was rendered on April 26, 1976.

[7] *See, e.g., Mount v. Curran,* 631 P.2d 496 (Alaska 1981); *Lyndel,* note 5; *Adams v. Parks,* 435 P2d 122 (Okla. 1967).

[8] *See, e.g., Whiteman v. Mattson,* 446 P2d 904 (Colo. 1968); *Label v. Cleasby,* 537 P.2d 859 (Wash. Ct. App. 1975); *Gustaveson v. Dwyer,* 139 P. 194 (Wash. 1914); *see also Nedderman v. City of Des Moines,* 268 N.W. 36 (Iowa 1936).

that erases prior possessory rights and all former interests in the land. *See, e.g., Label v. Cleasby,* 537 P.2d 859, 861 (Wash. Ct. App. 1975).

We conclude that the title the Leciejewskis acquired from the county defeats the Sedlaks' claim of ownership based on adverse possession that arose prior to the judgment of foreclosure.[9] A tax lien foreclosure under sec. 75.521 is an in rem proceeding against the land itself. *See, e.g.,* sec. 75.521 (2) (d), Stats.; *Devitt v. City of Milwaukee,* 261 Wis. 276, 52 N.W.2d 872 (1952). Under sec. 75.521 (13) (b), a foreclosure judgment has the effect of the issuance of a tax deed. The statute also provides that a foreclosure judgment vests in the county a fee simple absolute and cuts off any "right, title, interest, claim, lien or equity of redemption." Section 75.521 (8), Stats. Our supreme court has held that this provision is inconsistent with the idea that such a foreclosure may grant the county good title as to one person but not as to another. *Foreclosure of Tax Liens v. Young,* 106 Wis. 2d 244, 252, 316 N.W.2d 362, 366 (1982).

The language of secs. 75.521 (13) (b) and 75.521 (14a) also indicates that the intent is to foreclose all rights, titles, interests and claims in the land that is subject to the foreclosure. While sec. 75.521 (13) (b) expressly exempts recorded restrictions under sec. 75.14, Stats., from interests foreclosed by a judgment rendered pursuant to sec. 75.521,[10] there is no stated exemption in sec.

---

[9] Our decision renders it unnecessary to consider the Leciejewskis' request for an easement of necessity in the disputed property. We also note that the Sedlaks have not since satisfied the limitations period under § 893.25, Stats., after the judgment of foreclosure was entered.

[10] In this case, the quitclaim deed from the county to the Leciejewskis states that the land conveyed is subject to rights-of-way and easements of record and existing rights-of-way and easements.

75.521 for interests based on a claim of title by adverse possession. Under the language of sec. 75.521, the effect of the 1976 foreclosure judgment was to issue a tax deed to the county and to vest in the county an estate in fee simple absolute, which interest the Leciejewskis subsequently acquired.

This conclusion is consistent with decisions other jurisdictions have reached when considering the effect of an in rem tax foreclosure proceeding on interests in land or claims of title arising prior to the foreclosure. It has been held that the effect of a tax deed is not limited to passing that person's title in whose name the land was taxed, but is to divest all interests in the land and to vest in the grantee an independent and paramount title. *Nedderman v. City of Des Moines,* 268 N.W. 36, 37 (Iowa 1936). A tax title does not connect itself with the previous chain of title, but breaks up all previous titles. *Harrison v. Everett,* 308 P.2d 216, 219 (Colo. 1957). A tax deed is not derivative, but creates a new title that extinguishes all former titles and liens not expressly exempted from its operation. *Young,* 106 Wis. 2d at 251, 316 N.W.2d at 365, citing *Jensen Livestock Co. v. Custer Co.,* 124 P.2d 1013, 1018 (Mont. 1942).

The Sedlaks nevertheless argue that the intent of sec. 75.521 is to foreclose only the former owners' interest. They argue that they cannot be considered "former owners" under the statute, and that their interests are not aligned with or derived from those of the former owners. Although secs. 75.521(3)(a)4 and 75.521(13) (b) indicate that the judgment bars the former owners' claims, which could be construed as applying only to former owners of record, sec. 75.521(13)(b) also states that after a foreclosure judgment is rendered, "all persons . . . who may have had any right, title, interest, claim, lien or equity of redemption in such lands, are forever barred and foreclosed of such right, title, in-

terest, claim, lien or equity of redemption," and that the judgment has the effect of quieting title to the property. The in rem procedure set forth in sec. 75.521 affords a method by which the county acquires a fee simple interest in property upon full compliance with the statutory provisions. If we exempted the Sedlaks' claim of title from the operation of the foreclosure judgment, this would be inconsistent with the statutory intent, and with the notion that the foreclosure may not grant the county good title as to one person but not as to another. *See Young,* 106 Wis. 2d at 252, 316 N.W.2d at 366.

## Notice

The Sedlaks also contend that their interest should not be foreclosed under sec. 75.521 because they did not receive notice of the foreclosure proceeding. The Sedlaks cite *Foreclosure of Tax Liens v. Young,* 103 Wis. 2d 515, 309 N.W.2d 339 (Ct. App. 1981), to support their assertion. In *Young,* the court of appeals held that sec. 75.521 required that a vendor under a recorded land contract be given notice of a tax lien foreclosure proceeding. In reviewing the court of appeals' decision, the supreme court agreed that sec. 75.521 required that notice be provided to the land contract vendor. *See Young,* 106 Wis. 2d at 250, 316 N.W.2d at 365. Under the supreme court's decision in *Young,* if in this case the county was required under the notice provisions of sec. 75.521 to give notice of the foreclosure proceeding to the Sedlaks, the judgment of foreclosure would be void because the county failed to comply with the statute. *See id.*

The notice provisions of sec. 75.521 only require that the list of tax liens contain the name or names of the last owner or owners, and mortgagee or mortgagee *of record,* and that notice be mailed to those persons. Sec-

tions 75.521(3)(a)2 and 75.521(3)(c), Stats. The only other notice provision is the publication requirement in sec. 75.521(6). The supreme court's decision in *Young* that notice should have been given to the land contract vendor is consistent with the language of the statutory notice provisions because the land contract was recorded and the vendor was listed as the last owner of record at the register of deeds' office. In this case, the Sedlaks' claim of ownership in the land was not of record. There is also nothing in the language of the notice provisions of sec. 75.521 that would require the county to specifically notify by mail persons claiming ownership of land because of a possessory interest that subsequently may be determined to qualify as adverse possession. Assuming the county complied with all provisions of sec. 75.-521 and gave notice by mail to owners and mortgagees of record under sec. 75.521(3)(c) and notice of publication under sec. 75.521(6) to others, such as the Sedlaks, who claim an interest in or title to the land, the judgment of foreclosure would be valid, since the provisions of sec. 75.521 do not state that specific notice must be given to one in possession of the land who claims ownership under adverse possession.

*Motion to Amend Complaint*

The Leciejewskis assert that the trial court erred in denying their request at the close of evidence to amend their complaint to request that they be declared the owners of any buildings the Sedlaks had erected on the disputed property. The Sedlaks indicated that had they known the Leciejewskis were going to request such relief, they would have counterclaimed for the value of the buildings. The trial court apparently denied the motion to amend on the ground that it would prejudice the Sedlaks because they had not introduced evidence during

trial on the value of the buildings, which would have been relevant to a counterclaim for the value of improvements.

It is within the trial court's discretion to allow or to refuse amendments to pleadings, and we will not reverse that decision unless the trial court clearly abused its discretion. *Stanhope v. Brown County,* 90 Wis. 2d 823, 834, 280 N.W.2d 711, 715 (1979). The trial court did not abuse its discretion when it denied the Leciejewskis motion to amend. Under sec. 843.09, Stats., a defendant in an action to recover possession of real property may counterclaim for the value of improvements made to land that he claims to hold adversely by color of title asserted in good faith. Although the trial court eventually found that the evidence did not support the Sedlaks' defense of adverse possession under color of title, the court had not reached this decision at the time the Leciejewskis requested the amendment. The Sedlaks therefore would have been prejudiced because they had introduced no evidence during trial concerning the value of the buildings. An amendment cannot unfairly deprive an adverse party of the opportunity to contest issues the amendment raises. *Soczka v. Rechner,* 73 Wis. 2d 157, 162, 242 N.W.2d 910, 913 (1976).

The Leciejewskis request that we remand to the trial court with directions to correct a description of the property awarded to the Sedlaks contained in an affidavit. This affidavit was filed after the Leciejewskis filed the notice of appeal. An affidavit is a sworn statement, and we have no authority to direct the trial court to alter or modify any part of that statement.

*By the Court.*—Judgment reversed.