Martin, C. J.
 

 On March 3, 1843, one John Starr Rockwell acquired title by patent from the United States to the southeast fractional quarter of section 19, township 8 north, range 18 east, Waukesha county.
 

 The following conveyances were made of said lands, all parcels having as their north boundaries the line between the northeast and southeast quarters of section 19:
 

 1. February 13, 1855, John S. Rockwell and wife to Francis Martin (respondents’ predecessor in title) :
 

 “Commencing at the centre stake of section No. nineteen, town eight, range eighteen and run from thence east along the line between the northeast and southeast quarter of said section number nineteen far enough to include 10 acres next the west side of said south quarter of section No. nineteen by running south to a point at the edge of land flowed by water and thence along the water’s edge westerly to the north & south quarter line of said section nineteen.”
 

 2. March 13, 1855, John S. Rockwell and wife to Charles Wichman, the 5 acres lying east of the Martin land, the east line of the Martin land being the west line of the Wichman 5 acres.
 

 3. October 25, 1860, John S. Rockwell and wife to Wichman, an additional parcel east of Wichman’s 5 acres, having as its west line the north 84 rods of the east line of the
 
 *442
 
 5-acre tract, and extending east for a sufficient distance to make 1.03 acres.
 

 4. June 1, 1864, the estate of Rockwell to John Norton Reed, a parcel containing 2.40 acres lying directly east of the land last conveyed to Wichman.
 

 5. September 1, 1864, the estate of Rockwell to John Ferguson (appellant’s predecessor in title) :
 

 “All that portion of the southeast fractional quarter of section No. nineteen (19) township No. eight (8) north of range eighteen (18) east lying west from the centre of Oconomowoc river in the town of Merton, Waukesha county, state of Wis. (except that portion heretofore contracted or deeded) containing about 12 acres land more or less.”
 

 The Ferguson land was conveyed to Margaret Darrah on March 29, 1877, by deed describing it in the same language used in the Rockwell-Ferguson deed, except that the last phrase was changed to read “containing about 28 acres more or less.” Upon Margaret Darrah’s death in 1928 her heirs conveyed title to the appellant Stone Bank Improvement Company by a deed containing a metes-and-bounds description, “containing 26.58 acres.”
 

 The Francis Martin property was conveyed to Francis’ wife Catherine on December 17, 1880, by deed using the identical description contained in the Rockwell-Martin deed of February 13, 1855. When Catherine Martin died it was conveyed to Betsey Sorenson by deed dated July 11, 1895. This deed used the same description contained in the February 13, 1855, deed, and added the following:
 

 “A map and survey of said lands made by William R. Williams in May, 1860, is on file in the office of the said county court in said estate and to the same reference is hereby made for greater certainty as respects the description of said lands.”
 

 The map referred to, which is in evidence, shows the Martin land as a long, narrow tract running south from the
 
 *443
 
 line between the northeast and southeast quarters to an irregular northeast-southwest line indicated as the boundary of “Overflowed land.”
 

 In the final decree in the estate of Betsey Sorenson, recorded April 2, 1942, the property is described the same as in her deed from the estate of Catherine Martin in 1895.
 

 By two separate deeds dated October 15 and 18, 1949, the Betsey Sorenson heirs conveyed the property to Victor Sorenson and wife, using the same description as in the Martin-Sorenson deed of 1895.
 

 On August 10, 1955, the Sorensons conveyed the Francis Martin land to the respondents Harvey Vollriede and wife, using the same description as in their deeds from the Sorenson heirs, stating the lands have also been described as:
 

 “Commencing at the center post of said sec. 19, thence south on the quarter section line, 26.05% chains, thence north 40%° east, 6.66 chains; thence north 21 chains to the quarter section line; thence west 4.25 chains to the said center post of said section 19, and the place of beginning, containing ten (10) acres of land more or less.”
 

 And added the following:
 

 “In the event that there is any conflict between the above-mentioned descriptions, the first description shall control and it is the intention of all of the parties to this deed that the southern boundary of the land conveyed by this instrument shall at all times touch the water and to continue along the water’s edge . . .”
 

 The disputed area is a somewhat triangular-shaped piece of land, the southern line of which lies on the shore of Okauchee lake. This is at the south end of the Francis Martin property and is referred to by all parties as marshland.
 

 Appellant is required to prove its title to the disputed area under the well-established rule that:
 

 
 *444
 
 “A party claiming title and right to possession of land, under a very familiar rule, must recover upon the strength of liis own title, rather than upon the weakness of the title of his adversary.”
 
 Slauson v. Goodrich Transportation Co.
 
 (1898), 99 Wis. 20, 23, 74 N. W. 574.
 

 All the parties have Rockwell as their common grantor. The Martin, Wichman, and Reed conveyances preceded the Ferguson deed by which Ferguson acquired all the Rockwell lands in the southeast quarter section, west of the river, except those previously conveyed. Ferguson’s land was stated to contain about 12 acres, more or less. The deed from Ferguson to Darrah, conveying the same land, however, states it contained about 28 acres, more or less.
 

 Appellant argues that the marshland was not conveyed to Francis Martin but that his land ran down to a point in close proximity to it, enough to give him his 10 acres; that the title to the marsh area remained in Rockwell until the time of the Rockwell-Ferguson deed which conveyed to Ferguson all lands not previously conveyed.
 

 This is an attack on the Martin title. The general rule in ascertaining the boundaries of land where there is a conflict in the description is that quantity governs in the absence of courses and distances and monuments.
 

 However, in the Rockwell-Martin deed the acreage fixed the east boundary — “east . . . far enough to include 10 acres.” The south boundary was fixed by the “edge of land flowed by water and thence along the water’s edge westerly.” If the “edge of land flowed by water” was the shore of the lake, any accretion or reliction south of that line would belong to Martin and his successors, not to Rockwell and his subsequent grantees.
 

 The 1860 map filed in the Catherine Martin estate shows the Martin land to be bounded on the south by an area denominated “Overflowed Land” and it shows the south quarter post of the section “in deep water” within the area
 
 *445
 
 marked “Overflowed Land.” Such map also shows there was a gristmill and dam located upstream on the Oconomowoc river to the north of the overflowed land. There is no showing that this dam caused the overflowed land to the south thereof. A dam which would control the lake level would be downstream rather than upstream.
 

 Appellant failed to prove anything with respect to the character of the “land flowed by water.” Was it a temporary or permanent condition? Was it artificial or natural? Was it a portion of Okauchee lake? There is no proof. Appellant did not meet its burden. It failed to show any title to this area.
 

 The appellant makes much in its argument of a fence at the line it contends is the south boundary of the Martin land. There is testimony that such a fence existed before 1900 and thereafter. Even if the fence existed at the time of the Roclcwell-Martin deed (and there is no evidence that it did), it would not fix the south boundary of the Martin land in the face of the description in the deed itself which fixed such boundary at the “land flowed by water” and the “water’s edge.” And there is no mention whatever, in the Rockwell-Martin deed, of a fence or fence line.
 

 While the evidence shows that the fence in question was in place prior to 1900, there is no explanation of it in the record except that it was there when Betsey Sorenson acquired the land in 1895 and it was maintained by her husband during the years she owned the land in order to contain the cattle which the Sorensons pastured on the higher land to the north thereof. When Vollriede purchased the land in 1955 there was no fence there, although he testified he found old fence posts and old fence wire lying in the marsh. A survey in 1955 disclosed no surveyor’s corner posts at either end of the alleged fence line.
 

 Appellant blows hot and cold on the question whether the quantity stated in a deed controls. It argues that since the
 
 *446
 
 Rockwell-Martin deed shows an intention to convey only 10 acres, Martin’s successors have no right to claim more. On the other hand, although the Rockwell-Ferguson deed shows an intention to convey only 12 acres, appellant claims it has the right to demand 16 additional acres because the Ferguson-Darrah deed states that the land conveyed contains about 28 acres. (The later deed from the Darrah heirs to the appellant contains a metes-and-bounds description of land containing 26.58 acres.)
 

 The appellant can have no better title than its grantor. Whatever title Darrah had was derived from Ferguson and whatever title Ferguson had was derived from the Rockwell estate. The only reasonable explanation for the discrepancy in quantity between the Rockwell-Ferguson and the Ferguson-Darrah deeds arises from the fact that by the latter deed Ferguson conveyed three different parcels of land to Darrah. The first was “about 15 acres” in the southwest quarter of the
 
 northeast quarter
 
 of section 19. The second was the Rockwell property in the
 
 southeast quarter.
 
 The third was a parcel in the
 
 northwest quarter.
 
 “About 12 acres” in the southeast quarter was all that Ferguson acquired from Rockwell. Added to the 15 acres Ferguson owned in the parcel in the northeast quarter, there is a total of 27 acres. Under all the circumstances, the fact that the land in the southeast quarter was stated in the Ferguson-Darrah deed to be 28 acres is reasonably attributed to the error of adding together the acreage of the first two parcels.
 

 Appellant fails to account for the discrepancy in quantity between these two deeds. It argues that the Rockwell-Ferguson deed states “12 acres land,” not including the marsh, while the statement “28 acres” in the Ferguson-Darrah deed did include the marshland. These deeds do^ not so state and there is no proof in the record that they were intended to have such meaning.
 

 
 *447
 
 It was appellant’s burden to establish its right to the disputed area on the strength of its own title, but all it has done is attack the weakness of respondents’ title. This, under the rule stated, it cannot do.
 

 Appellant makes the further argument that it acquired the disputed area by adverse possession. The rule was stated in
 
 Bank of Eagle v. Pentland
 
 (1928), 197 Wis. 40, 41, 221 N. W. 383, as follows:
 

 “The law has been settled in this state, by repeated decisions, that evidence of adverse possession is always to be construed strictly, and every presumption is to be made in favor of the true owner. . . . Adverse possession is not to be made out by inference, but by clear and positive proof; and one in possession of land to which he has no claim of title is presumed to be in possession in amity with and in subservience to the legal title of the real owner. . . . To constitute adverse possession there must be the fact of possession and the hostile intention — the intention to usurp possession. Mere permissive possession is never a basis for the statute of limitations.”
 

 And in
 
 Bettack v. Conachen
 
 (1940), 235 Wis. 559, 571, 294 N. W. 57:
 

 “. . . the possession of one claiming adversely must be of such a character as to apprise the true owner that the possessor claims adversely and to the exclusion of the true owner.”
 

 Several fences are mentioned in the conveyance from the Darrah heirs to the appellant. As stated above, appellant has failed to show that the ancieirt fence line which it maintains is the southerly boundary of respondents’ land conforms to the south limits of the Martin tract described as “the edge of land flowed by water.” There is no evidence of acquiescence in a line established by the fence to raise a presumption that it was the true line.
 

 There is evidence that occasionally some of appellant’s stockholders made repairs to the old fences and that they
 
 *448
 
 walked through and hunted upon the marshland area. Victor Sorenson, respondents' predecessor in title, testified he used the marsh for hunting and from 1949 to 1955, the period he owned the Martin tract, appellant made no claim to possession of the area and he was never kept out of it. Vollriede testified that when he acquired the property in 1955 there was no fence at the north edge of the marsh. Two years later he found a fence had been put up during his absence and he removed and relocated it at the north-south line on the east edge of his property toward the lake, “where it belonged.” He at all times claimed the marsh area was his property and at no time did he recognize that appellant had any rights in it. He placed a building south of the line where the old fence was and after receiving a letter from the appellant demanding its removal, he removed it; but Vollriede testified he did so, not in response to such demand, but because he sold the building. He also hauled fill into the marsh.
 

 There is no clear and positive evidence in the record of adverse possession by the appellant — no fact of possession, no hostile intention, no exclusion of the respondents. On the contrary, the record shows that respondents at all times asserted their title to the area in question.
 

 By the Court.
 
 — Judgment affirmed.