COUNTY OF LANGLADE, Plaintiff-Respondent,

v.

Michael N. KASTER and Jacqueline T. Kaster, husband and wife, Defendants-Appellants.

Court of Appeals

*No. 95–2694. Submitted on briefs April 9, 1996.—Decided May 7, 1996.*

(Also reported in 550 N.W.2d 722.)

On behalf of plaintiff-respondent, the cause was submitted on the brief of *Robin James Stowe*, corporation counsel of Antigo.

On behalf of defendants-appellants, the cause was submitted on the briefs of *Thomas J. Nichols* and *Christopher L. Rexroat* of *Meissner Tierney Fisher & Nichols S.C.* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   Michael N. and Jacqueline T. Kaster appeal a judgment declaring Langlade County's ownership of a road running through their property as a public highway pursuant to § 80.01(2), STATS., because the County "worked" the road for ten years. We conclude that the evidence is insufficient as a matter of law to show the road has been worked as a public highway for purposes of § 80.01(2). The evidence established only that, over a twenty-five-year period, the County once repaired a bridge on the road to accommodate snowmobilers who used the road with express permission of the landowner, and on three occasions required that loggers using the road restore the road to the condition in which they found it. We reject the County's alternate argument that it gained prescriptive rights for use of the road because the County and the public used the road with permission. Therefore, we reverse the judgment. We express no opinion whether the County obtained the road by common law dedication because the issue was not pleaded or raised at trial.

In the 1920s, the Civilian Conservation Corps developed a fire lane on the property now owned by the Kasters, which remains an unnamed road. Prior owners of the property gave the state an easement for the

fire lane in 1938, but the state unconditionally released the easement in 1970. The easement was limited to agents and representatives of the Wisconsin Conservation Commission.

The public has used the road for at least twenty-five years. The unnamed road runs through the property the Kasters purchased from the estate of Peter Rasmussen in 1994. Rasmussen's son testified at trial that his father always intended the public to use the road running through his property as they pleased.

In the late 1980s, at the request of a snowmobile club, the County repaired a bridge on the road running through the Kasters' property. The repairs cost approximately $1,200. The Rasmussens were not given prior notice of the repairs. County forestry employees testified they did not recall ever brushing, grading or graveling the road, and the County never placed culverts on the road.

The road provides the only year-round access to adjoining public lands. On three occasions since 1970, the County has logged the adjoining public land and the loggers have gained access to the public land through use of the road. Under the timber sale contracts, the County required the loggers to restore the road to its condition before logging.

Shortly after the Kasters purchased the property, they erected a gate across the road. The County filed suit seeking a declaration of its ownership rights in the road and an order permanently enjoining the Kasters from excluding the public from using the road. The County sought relief based on two theories: (1) the County worked the road for a period of ten years and therefore it is a public highway pursuant to § 80.01(2),

STATS.,[1] and (2) the County has obtained an ownership interest in the road through adverse possession under § 893.25, STATS.[2] The parties tried the case to the court. The court concluded that the property owners lost ownership in the road and that it became a public highway because the County had worked the road for a period of ten years. The court did not address the County's adverse possession argument.

The issues presented involve the construction and application of §§ 80.01(2) and 893.28, STATS. Construction of a statute and application to a particular set of facts are questions of law we review de novo. *State v. Block Iron & Supply Co.*, 183 Wis. 2d 357, 363, 515 N.W.2d 332, 334 (Ct. App. 1994). We affirm the trial court's factual findings unless they are clearly erroneous. Section 805.17(2), STATS.

## WHETHER THE ROAD WAS WORKED AS A PUBLIC HIGHWAY

Section 80.01(2), STATS., provides that roads "which have been worked as public highways 10 years or more are public highways . . . ." Whether evidence is sufficient to meet a statutory standard is a question of

---

[1] Section 80.01(2), STATS., provides in part: "All highways not recorded which have been worked as public highways 10 years or more are public highways . . . ."

[2] At trial, the County argued that it gained adverse possession of the road under § 893.25, STATS. In contrast, the County argues on appeal that it gained prescriptive rights to use the road, presumably under § 893.28, STATS. This difference is irrelevant to our conclusion that the County used the road permissively. Permissive use defeats both a claim for adverse possession and an easement by prescriptive use.

law. *Beacon Bowl, Inc. v. WEPCO*, 176 Wis. 2d 740, 783, 501 N.W.2d 788, 805 (1993).

The trial court concluded that the County worked the road when it replaced the bridge in approximately 1988 and when, in 1970, 1977 and 1989, it required loggers to restore the road to its condition before logging began on adjacent county land. The Kasters dispute whether the loggers actually worked on the road and, if so, whether the loggers' work constituted County work for the purposes of § 80.01(2), STATS. We do not address those issues because we conclude that even if the loggers' work is attributed to the County for purposes of § 80.01(2), the law requires the public entity to work the road in a manner that demonstrates ownership. As discussed later herein, the County's motive for requiring the road be restored to its prior condition is ambiguous and therefore insufficient to show it was worked as a "public highway."

In *Ruchti v. Monroe*, 83 Wis. 2d 551, 556-57, 266 N.W.2d 309, 313 (1978), our supreme court stated:

> Whether based upon a theory of common law prescription by use over 20 years or upon sec. 80.01(2), STATS., by maintenance over 10 years, *the town does not acquire prescriptive rights in the road if its use of the road was merely permissive. . . .*
>
> Generally, unexplained use of an easement over enclosed, improved or occupied lands for 20 years is presumed to be adverse. Likewise, under sec. 80.01(2), Stats., where work has been done and public money expended on a road under the direction of public officials, there is sufficient public use to establish it as a highway. Thus, upon a showing by the town of use by the public for more than 20 years or maintenance by the town for 10 years, the landowner has the burden of proving permissive

use under some license indulgence or special contract. (Emphasis added, citations omitted.)

A use that is permissive in the beginning can be changed into one that is hostile only by the most unequivocal conduct on the part of the user. *Lindokken v. Paulson*, 224 Wis. 470, 475, 272 N.W. 453, 455 (1937). The trial court found that Rasmussen, the former owner of the Kasters' land, "invited the public to use the road at will." The County's use of the road was originally permissive.

The County did not assert a right to use the road beyond the scope of Rasmussen's permission by repairing the bridge. Rasmussen expressly permitted the public to use the road for snowmobiling.[3] The County repaired the bridge at the request of a snowmobile club. A $1,200 County expenditure to improve the road for snowmobiling is a natural extension of the public's permitted use.

The County also did not assert ownership rights over the road by requiring that the loggers return the road to its preexisting condition. The trial court found that Rasmussen gave the public an open invitation to use the road. This finding is consistent with the inference that Rasmussen was aware neighboring landowners (including the County) may use the road for logging. Rasmussen himself contemplated logging his land. Further, the County's agreement with the

---

[3] A snowmobile club invited Rasmussen to an annual appreciation dinner thrown for landowners who permit snowmobilers to cross their land. This evidence is consistent with the trial court's finding of permissive use. The invitation is also consistent with an understanding between Rasmussen and the public that the road belonged to Rasmussen, but that he was permitting the snowmobilers to use the road.

loggers is not unequivocal evidence of a claim of ownership on the part of the County. It was in the County's interest to keep a private road in good repair because it had a financial interest in the logging contracts and would benefit from the road repairs. Improving the road to efficiently log these areas and returning the road to its preexisting state is at least as consistent with a permissive use of the road as it is with a hostile claim of ownership.

We conclude that under the facts found by the trial court, the road has not been "worked as a public highway 10 years or more" under § 80.01(2), STATS. The test is whether the work demonstrates the public's ownership of the road so that the public's use of the road is not merely permissive. *See Ruchti*, 83 Wis. 2d at 556, 266 N.W.2d at 313. This test gives the landowner sufficient notice to claim the road as his or her own if a public entity works on the road. Without establishing a bright-line test for the "worked" requirement, we note that continuous work on a road by a public entity is more likely to demonstrate ownership than sporadic work.[4]

---

[4] Although the issue whether a public entity can claim a road is a public highway under § 80.01(2), STATS., by performing only sporadic work on the road has arisen in prior cases, no Wisconsin court has resolved it. In *Ruchti v. Monroe*, 83 Wis. 2d 551, 555, 266 N.W.2d 309, 312 (1978), a landowner argued that a road on his property did not become a public highway under the statute because the township only performed occasional work on the road. Without addressing whether a road would become a public highway if a public entity only occasionally worked on the road, our supreme court rejected the landowners' argument on grounds that the road work in that case appeared

## ACQUISITION BY PRESCRIPTION

Next, the County contends that it acquired the right to use the road by prescription. The County bases its claim on testimony that the public used the road for more than twenty years. *See* § 893.28(1), STATS. A prescriptive easement requires the following elements: (1) adverse use that is hostile and inconsistent with the exercise of the titleholder's possessive rights (2) that is visible, open and notorious (3) under an open claim of right (4) and is continuous and uninterrupted for twenty years. *Mushel v. Town of Molitor*, 123 Wis. 2d 136, 144, 365 N.W.2d 622, 626 (Ct. App. 1985). Hostile intent does not exist if the use is pursuant to the permission of the true owner. *Northwoods Dev. Corp. v. Klement*, 24 Wis. 2d 387, 392, 129 N.W.2d 121, 123 (1964). Pursuant to § 893.28(3), STATS., the use of a way over unenclosed land is presumed to be permissive and not adverse. A user must present positive evidence to establish a prescriptive easement, and every reasonable presumption must be made in favor of the landowner. *Mushel*, 123 Wis. 2d at 145, 365 N.W.2d at 626.

---

to have been done continuously, not sporadically. *Id.* at 556, 266 N.W.2d at 312-13.

In *Mushel v. Town of Molitor*, 123 Wis. 2d 136, 143, 365 N.W.2d 622, 625 (Ct. App. 1985), the town claimed that the road at issue became a public highway under § 80.01(2), STATS., because the town worked on the road sporadically. We did not address whether sporadic work satisfied the statutory requirement because we concluded that the trial court's finding that the town did not expend any of its own money on the road was not clearly erroneous. *Id.* at 144, 365 N.W.2d at 626.

The County did not acquire a prescriptive easement over the road because the public used the land permissively, not in an adverse or hostile manner. The County does not challenge the trial court's finding that "the public was invited to use the road at will." Based on the trial court's finding and the presumption in § 893.28(3), STATS., we conclude that use of the road was permissive.

## COMMON LAW DEDICATION

For the first time on appeal, the County raises the issue whether Rasmussen's conduct constituted a common law dedication of the road to the public. A common law dedication requires an intention to dedicate and an acceptance of the dedication by the proper public authorities or by the general public user. *Mushel*, 123 Wis. 2d at 145-46, 365 N.W.2d at 627. We will not address this issue because determining Rasmussen's intention to dedicate the land is a question of fact that was not resolved at trial. *See City News & Novelty v. City of Waukesha*, 170 Wis. 2d 14, 20-21, 487 N.W.2d 316, 318 (Ct. App. 1992).

The County argues that testimony that Rasmussen intended to permanently let the public use his land shows his intent to dedicate the land to the public. We agree that such evidence would be sufficient to support a verdict finding an intent to dedicate. In *Lemon v. Hayden*, 13 Wis. 177, 185 (1860), our supreme court concluded that "acquiescence of the owner in the free use and enjoyment of the way as a public road for the period of twenty years, has been deemed sufficient evidence of the dedication, though there was no further

proof of an intention to dedicate." However, we conclude that while such evidence is sufficient, it does not by itself establish an intent to dedicate *as a matter of law*. The parties did not try the case on a theory of common law dedication. Therefore, evidence pro or con of Rasmussen's intent to dedicate the land was not presented. Because Rasmussen's intent to dedicate is a question of fact not resolved at trial, we will not address the issue of common law dedication. *See City News & Novelty*, 170 Wis. 2d at 20-21, 487 N.W.2d at 318.

## CONCLUSION

We conclude that the road did not become a public highway under § 80.01(2), STATS., because the County did not work it in a manner that demonstrated ownership of the road. We also conclude that the County did not obtain a prescriptive easement or adverse possession rights to the road because its use and the public's use of the road was permissive. Finally, we do not address the issue whether Rasmussen dedicated the road to public use because that determination requires resolution of factual questions not decided at trial.

*By the Court.*—Judgment reversed.