Richard S. Wilcox and Susan K. Wilcox,
Plaintiffs-Appellants,

v.

Estate of Ralph Hines, Estate of
William J. Newman and Lake Delton Holdings,
LLC, Defendants-Respondents,†

Chicago Title Insurance Company, Defendant.

Court of Appeals

*No. 2012AP1869. Submitted on briefs February 11, 2013.
—Decided April 11, 2013.*

2013 WI App 68

(Also reported in 831 N.W.2d 791.)

† Petition for Review granted 9-17-13.

124

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Edward A. Corcoran* of *Neider & Boucher, S.C.*, Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Richard L. Schmidt* and *James E. Bartzen* of *Boardman & Clark LLP*, Madison.

Before Lundsten, P.J., Blanchard and Kloppenburg, JJ.

¶ 1. LUNDSTEN, P.J. This appeal involves Richard and Susan Wilcox's claim of title by adverse possession to a narrow strip of land separating their property from Lake Delton. The legal question we must resolve is whether the lack of subjective intent on the part of the Wilcoxes' predecessors in interest to claim title and the predecessors' use of the property with the permission of a non-owner, along with other clear indications that the predecessors believed they were using the land with permission, defeats the Wilcoxes' adverse possession claim. The circuit court concluded that, regardless of the lack of involvement of the true owner, the fact that the predecessors asked for permission to use the property, and later affirmatively asserted to specified persons that the property was not theirs, showed that the predecessors did not have the "hostile intent" required for adverse possession.

¶ 2. The parties' dispute over the circuit court's ruling highlights what might appear to be an inconsistency in adverse possession case law. Several cases broadly pronounce that the subjective intent of parties

127

is irrelevant. At the same time, and seemingly inconsistently, the adverse possession statute, WIS. STAT. § 893.25(2)(a),[1] requires "occupation under claim of title," and several cases, at least superficially, indicate that subjective intent does matter. In the discussion below, we discuss this apparent inconsistency, and resolve the legal dispute in favor of the Wilcoxes. Accordingly, we reverse the circuit court and remand for further proceedings.

## Background

¶ 3. The property at issue here is a 25–foot-wide strip of lake frontage on Lake Delton. The ownership history of the disputed strip of lakefront property is complicated. For purposes of this opinion, we will refer to the respondents, and their predecessors in interest, as the titleholders.[2] The following summary of facts is based on a view of the evidence in a light most favorable to the circuit court's decision.

¶ 4. In 1963, Ronald and Mary Soma purchased property near the shore of Lake Delton. The property the Somas purchased is separated from Lake Delton by the disputed lakefront strip. The Somas always under-

---

[1] All further references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

[2] The disputed property is comprised of two parcels. One parcel was owned by William Newman, who died in 1944, and the other was owned by Ralph Hines, who died in 1977. Eventually, both parcels were passed down to the heirs of the Newman and Hines estates. It appears that both estates sold their interests in the parcels to Lake Delton Holdings, LLC. There is a lack of clarity in the briefing—which we have not attempted to resolve by searching the record—as to which of the respondents have a current interest in the property, but we can discern no reason why this lack of clarity affects the issue on appeal.

stood that they did not own the lakefront strip. Nonetheless, from the beginning they took steps to exclude others, including putting up a "no trespassing" sign and telling people that the lakefront strip was private property.

¶ 5. The Somas mistakenly believed that the lakefront strip was owned by a company that operated the "Wisconsin Ducks" tours. When the Somas wanted to put out a pier from the lakefront strip, Ronald Soma asked for permission from a manager employed by the Wisconsin Ducks. Subsequently, in 1982, Wisconsin Ducks employees were making improvements to the lakefront strip, and the Somas asked for and received permission from the same manager to push some rocks to the water's edge, bring in dirt, and plant grass seed on the lakefront strip. Thereafter, acting under the mistaken impression that they had permission from the true owner to do so, the Somas mowed and otherwise maintained the lakefront strip as if they were the owners.[3]

¶ 6. Although she did not specify a date, Mary Soma testified that, at some point after 1982, the Somas once challenged their property tax assessment on the basis that they did not own the lakefront strip. Mary testified that they went in for an "open book" and spoke with a village tax assessor, who declined to reduce their taxes.

¶ 7. In 2002, the Somas sold their property to the Wilcoxes. At that time, Ronald Soma told the Wilcoxes

---

[3] The titleholders assert in their appellate brief that the "Somas did not keep *everybody* off the land." In this respect, however, the titleholders are referring to work done on the lakefront strip by the Wisconsin Ducks in 1982. We agree that the use that year was not exclusive. However, the evidence shows that use after that year was exclusive.

that the sale did not include the lakefront strip because the Somas did not own the property.

¶ 8. Prior to this lawsuit, neither the Somas nor the Wilcoxes learned the identities of the true titleholders. And, there is no evidence that the titleholders did anything with respect to the lakefront strip.[4]

¶ 9. As aptly summarized by the circuit court, both the Somas and the Wilcoxes "made improvements to the [lakefront strip] in terms of plantings, use of the land, mowing, filling in, riprap, stone, brick, dirt and so forth . . . over the time, the entire time since the Somas obtained title" and "[t]hose efforts would be visible and would be open to anyone looking at those."

### *Discussion*

¶ 10. The general legal principles applicable to adverse possession claims and the standards governing our review of a circuit court's decision on such claims are as follows:

> In reviewing a circuit court's determination of adverse possession, we accept the circuit court's factual findings unless they are clearly erroneous. We review de novo whether those facts fulfill the legal standard for adverse possession. Our standard of review is the same regarding the doctrine of acquiescence.
>
> . . . .
>
> Pursuant to Wis. Stat. § 893.25(2)(a) and (b), real estate is possessed adversely only if "the person possessing it, in connection with his or her predecessors in

---

[4] There is some evidence that the titleholders took actions with respect to other portions of lakefront property they owned on Lake Delton, but none of those actions affect this dispute.

interest, is in actual continued occupation under claim of title, exclusive of any other right," and "[o]nly to the extent that it is actually occupied." In addition, the property must be "protected by a substantial enclosure" or "usually cultivated or improved." Pursuant to § 893.25(1), the adverse possession must be uninterrupted for twenty years.

In order to constitute adverse possession, "the use of the land must be open, notorious, visible, exclusive, hostile and continuous, such as would apprise a reasonably diligent landowner and the public that the possessor claims the land as his own." "Hostile" in this context does not mean a deliberate and unfriendly animus; rather, the law presumes the element of hostile intent if the other requirements of open, notorious, continuous, and exclusive use are satisfied. "Both . . . the fact of possession and its real adverse character" must be sufficiently open and obvious to "apprize the true owner . . . in the exercise of reasonable diligence of the fact and of an intention to usurp the possession of that which in law is his own . . . ." The size and nature of the disputed area are relevant in deciding if the use is sufficient to apprise the true owner of an adverse claim.

The party seeking to claim title by adverse possession bears the burden of proving the elements by clear and positive evidence. The evidence must be strictly construed against the claimant and all reasonable presumptions must be made in favor of the true owner. One of these presumptions is that "actual possession is subordinate to the right of [the true] owner."

*Steuck Living Trust v. Easley*, 2010 WI App 74, ¶¶ 11–15, 325 Wis. 2d 455, 785 N.W.2d 631 (citations omitted; footnote omitted).

¶ 11. Here, the evidence of adverse possession centers on the Wilcoxes' predecessors in interest, the Somas, and, like the parties, we focus our attention on

the Somas' time as possessors. The titleholders do not argue that any relevant aspect of the possession changed when the Wilcoxes purchased the Somas' property.

¶ 12. As to the Somas, the evidence showed that they subjectively held the correct belief that they did not own the lakefront strip and also subjectively held the incorrect belief that their use of the property was with the permission of the true owner. Thus, it is undisputed that the Somas did not actually intend to possess the disputed property to the exclusion of the rights of others. The titleholders argue that this lack of actual intent is fatal. The titleholders assert that "[i]ntention is part of the court's inquiry—not intent to injure, but intention to claim exclusive right." Under the titleholders' view of adverse possession law, the required showing of "hostile" possession cannot be met if the possessor lacks a subjective intent to claim the exclusive right to possess.[5]

---

[5] We observe that this is an argument based on both statutory language and the common law. That is, although the titleholders sometimes frame their argument in terms of the Wilcoxes' failure to meet statutory language, namely, the requirement under WIS. STAT. § 893.25(2)(a) that "occupation [be] under claim of title," we understand the titleholders' focus to be on the meaning of the common law term "hostile." The titleholders state: " '[U]nder claim of title, exclusive of any other right' is simply a more modern way of saying that the occupation must be 'hostile' and 'exclusive.' " Similarly, the titleholders assert that "[h]ostility means that the possessor claims exclusive right to the land possessed." We agree that discussions in case law regarding the meaning of "hostile intent" are, in effect, discussions covering the topic of whether possession meets the statutory "claim of title" requirement. *See, e.g., Leciejewski v. Sedlak*, 110 Wis. 2d 337, 343, 329 N.W.2d 233 (Ct. App. 1982) (in the context of an adverse possession case, the term "hostility" means only "that one in possession claims exclusive right to the

¶ 13. The titleholders' argument is in keeping with the reasoning of the circuit court. The circuit court concluded that the Somas did not have hostile intent because they disclaimed ownership of the lakefront strip and asked for permission to make improvements. According to the circuit court, the fact that the Somas asked for permission to improve the property, albeit from a non-owner, showed that the Somas had no intent that "their actions . . . be hostile to any ownership interest."

¶ 14. Although the circuit court's view of the law is understandable in light of numerous statements in adverse possession case law seeming to require actual subjective intent, we conclude that the circuit court erred. For the reasons explained below, we conclude that the Somas' subjective belief that they did not own the lakefront strip and had no intention of possessing it to the exclusion of others is not relevant.

¶ 15. Wisconsin adverse possession case law contains numerous statements which, if read in isolation, suggest that the subjective intent to hostilely possess property matters. Typically, such statements assert that proving adverse possession requires a showing of hostile intent in the sense of possession with intent to claim exclusive right to property. *See, e.g., Stone Bank Improvement Co. v. Vollriede*, 11 Wis. 2d 440, 447, 105

land possessed"). Indeed, older cases seemingly combine the terms. *E.g., Kimball v. Baker Land & Title Co.*, 152 Wis. 441, 448, 140 N.W. 47 (1913) (discussing adverse possession and characterizing case law as "requiring allegation of hostile title to allege facts from which the hostile claim of title or interest is raised"); *Illinois Steel Co. v. Bilot*, 109 Wis. 418, 446, 84 N.W. 855, 85 N.W. 402 (1901) ("If the claimant 'raises his flag and keeps it up,' so to speak, sufficiently to attract the attention of the true owner to the situation . . . as a hostile claim of title, knowledge of such owner may be presumed as a fact . . . .").

N.W.2d 789 (1960) (" 'To constitute adverse possession there must be the fact of possession and the hostile intention—the intention to usurp possession.' " (quoting *Bank of Eagle v. Pentland*, 197 Wis. 40, 42, 221 N.W. 383 (1928)); *Keller v. Morfeld*, 222 Wis. 2d 413, 420–21 n.3, 588 N.W.2d 79 (Ct. App. 1998) ("[Hostility is] an intention to 'usurp the possession'—to claim exclusive right to property which one possesses physically, but not by record title."). On closer inspection, however, it becomes apparent that these cases are not referring to actual subjective intent, but instead to the *appearance* that a possessor's use would give to the true owner.

¶ 16. Although not with optimal clarity, this court has explained that, in the adverse possession context, the term "hostile" refers to a possessor's actions, not a possessor's belief. In *Keller*, we repeated common language that seems to be directed at the subjective intent of a possessor, but we then explained, in effect, that hostility is measured by what a possessor does and what the appearance would be to the owner, not what the possessor thinks:

> [A]n act is hostile in the context of an adverse-possession claim, when it is "inconsistent with the right of the owner and not done in subordination thereto." It is an intention to "usurp the possession"—to claim exclusive right to property which one possesses physically, but not by record title. *To evince hostility in this sense, an adverse claimant must only do something which "clearly brings home to his [or her] neighbor the* fact that he [or she] intends to claim the property against his [or her] neighbor and the world." "If the elements of open, notorious, continuous, and exclusive possession are satisfied, the law presumes the element of hostile intent."

*Keller*, 222 Wis. 2d at 420–21 n.3 (emphasis added; citations omitted).

¶ 17. Our explanation in *Keller* above, and our conclusion here that the Somas' intent does not matter, are consistent with repeated statements in cases to the effect that subjective intent does not matter. *E.g., Allie v. Russo*, 88 Wis. 2d 334, 347, 276 N.W.2d 730 (1979) ("The subjective intent of either of the parties is irrelevant to a determination of a claim of adverse possession."); *Mielke v. Dodge*, 135 Wis. 388, 394, 115 N.W. 1099 (1908) (possessor's admission that she never intended to claim more property than up to the true property line was irrelevant); *Steuck Living Trust*, 325 Wis. 2d 455, ¶ 17 n.7 (commenting that, although some of the circuit court's findings suggested that the true owner's subjective intent was relevant, "the circuit court correctly recognizes elsewhere [that] the subjective intent of neither party is relevant to a claim of adverse possession").

¶ 18. Similarly, our explanation of "hostile" in *Keller* and our conclusion here are consistent with cases stating the corresponding proposition, that what does matter is what is visible. *See, e.g., Allie*, 88 Wis. 2d at 344 ("There must be actual visible means by which notice of the intent to exclude is given to the true owner."); *Burkhardt v. Smith*, 17 Wis. 2d 132, 137, 115 N.W.2d 540 (1962) ("We consider the acts of the defendant, in building his cottage, in removing the dead trees and brush, and in putting in a lawn, extended substantially over the [disputed property] and was sufficient to plant the defendant's 'flag of hostility.' "); *Ovig v. Morrison*, 142 Wis. 243, 247, 125 N.W. 449 (1910) ("Actual occupancy of land to the exclusion of the true owner, regardless of whether in good faith or bad faith, whether by mistake of boundaries or with intent to

135

claim the land with full knowledge that the claim is wrongful, satisfies the calls of the statute.").

¶ 19. As indicated above, confusion arises because cases often seem to declare, in one breath, that a possessor must actually intend to claim an exclusive right to possess property and then, in the next breath, assert that the subjective intent of the possessor is irrelevant or, to the same effect, go on to ignore the possessor's subjective intent in the discussion of facts. *See, e.g., Stone Bank Improvement Co.*, 11 Wis. 2d at 447–48 (quoting hostile intent language, but discussing actual visible use to resolve an adverse possession claim); *Otto v. Cornell*, 119 Wis. 2d 4, 7, 349 N.W.2d 703 (Ct. App. 1984) (" 'Hostility' means only that the possessor claims exclusive right to the land possessed. The subjective intent of the parties is irrelevant to the determination of an adverse possession claim." (citations omitted)). Such cases, however, merely reflect that, in the adverse possession context, intent to possess to the exclusion of others and other similar formulations are misleading if read literally.

¶ 20. As the cases above and the examples that follow demonstrate, when it comes to adverse possession, the question is whether the use of the property by the possessor gives the appearance that the possessor claims exclusive right to the land. *E.g., Leciejewski v. Sedlak*, 110 Wis. 2d 337, 343–44, 329 N.W.2d 233 (Ct. App. 1982) (planting trees and garden, mowing, construction of a shed and barn, and building of a fence and boathouse were use of the land sufficient to constitute adverse possession); *Steuck Living Trust*, 325 Wis. 2d 455, ¶¶ 18–21 (hunting and noise of gunshots on wooded land not sufficiently open and "visible" to constitute adverse possession); *Keller*, 222 Wis. 2d at 420–23 (use of land as a parking area and for storage in

136

addition to mowing and maintaining area satisfied adverse possession requirements); *Pierz v. Gorski*, 88 Wis. 2d 131, 138–39, 276 N.W.2d 352 (Ct. App. 1979) (creating a worm bed, spraying, planting clover and trees, cutting down fallen branches, using a logging road, and making a rock pile on wooded land not sufficiently open and visible to constitute adverse possession).[6]

¶ 21. The sole exception we find to the exclusive focus on the appearance of the use is use with permission *of the true owner.* This exception makes sense because it is axiomatic that, when a true owner gives permission to a party to use property, subsequent use by the party would not give the appearance to the owner that the use is hostile to the owner's rights. *See Northwoods Dev. Corp. v. Klement*, 24 Wis. 2d 387, 392, 129 N.W.2d 121 (1964) ("[I]f possession was pursuant to permission of the true owner, there could not be the hostile intent necessary to constitute adverse possession."); *County of*

---

[6] We do not mean to imply that the many published adverse possession cases uniformly ignore the beliefs of the parties. For example, even in *Allie v. Russo*, 88 Wis. 2d 334, 347, 276 N.W.2d 730 (1979), where the court plainly stated that "[t]he subjective intent of either of the parties is irrelevant to a determination of a claim of adverse possession," the court went on to discuss testimony both about use and the beliefs of the parties. *See, e.g., id.* ("leaving only the well-supported finding that respondent considered the fence to be the lot line"). But a careful reading of *Allie* reveals that the supreme court's rejection of the adverse possession claim ultimately turned on the court's view that the circuit court could not reasonably have rejected testimony showing non-exclusive use. *See, e.g., id.* at 348 ("There is no finding that this use was exclusive, nor could there be unless all of appellants' testimony was believed incredible and the physical evidence of an unlocked gate facing appellants' back door which opens over a sidewalk leading both to appellants' back door and the street in front of their house is ignored.").

*Langlade v. Kaster*, 202 Wis. 2d 448, 453–56 & nn.2–3, 550 N.W.2d 722 (Ct. App. 1996) (noting that permission given by the true owner "defeats both a claim for adverse possession and an easement by prescriptive use," *id.* at 453 n.2); *see also Shepard v. Gilbert*, 212 Wis. 1, 7–8, 249 N.W. 54 (1933) (stating, in the prescriptive easement context, that permission of a true owner "gives to conduct of the user the appearance and color of a subordinate use"). But where, as here, a true owner did not give permission and was unaware of permission given by a non-owner, the appearance, when judged from the position of the true owner, is not affected.

¶ 22. For the same reason, we conclude that the Somas' communications with the Wisconsin Ducks employee, the tax assessor, and the Wilcoxes indicating the Somas' belief that they did not own the lakefront strip are irrelevant. As with permission from a non-owner, statements to these parties had no effect on how the titleholders or the public would have viewed the Somas' use of the lakefront strip.[7]

---

[7] We note that the titleholders do not argue that, because a limited number of non-owner third parties understood that the Somas thought they had permission of the true owner, the appearance of the Somas' possession of the lakefront strip "to the public" was that of permissive use. The absence of such an argument seems appropriate. Although case law often speaks in terms of how possession would appear to both a true owner and the public, *see, e.g., Pierz v. Gorski*, 88 Wis. 2d 131, 137, 276 N.W.2d 352 (Ct. App. 1979) ("such as would apprise a reasonably diligent landowner and the public"), such references to the public do not appear to add anything to the analysis. Thus, statements of law and discussions of facts in cases sometimes dispense with references to the public and focus on how the possession would appear to an attentive true owner. *See, e.g., Illinois Steel Co.*, 109 Wis. at 446 ("If the claimant 'raises his flag and keeps it up,' so to speak, sufficiently to attract the attention of the true owner to the situation, in view of the circumstances of

¶ 23. As much of our discussion to this point suggests, blanket pronouncements on the topic of adverse possession are risky undertakings. For example, in *Allie*, our supreme court stated that "[t]he sole test of adverse possession is the physical character of the possession," *Allie*, 88 Wis. 2d at 343, but as our true-owner-permission discussion makes clear, this sweeps too broadly. Permission from a true owner is not a "physical character of the possession," but it does inform, and therefore affect, how a true owner would view the "character of the possession." Accordingly, we do not hold that, when it comes to adverse possession claims, the subjective intent of a possessor is never relevant. Rather, we rely on the general rule that the subjective intent of the parties is irrelevant, and we discern no reason not to apply that rule here.

¶ 24. Having rejected the titleholders' assertion that the Wilcoxes needed to prove that the Somas actually intended to occupy the lakefront strip exclusive of the rights of others, we discern no remaining issue in need of resolution. The titleholders acknowledge that

the invasion, as a hostile claim of title, knowledge of such owner may be presumed as a fact . . . ."). And, so far as our research reveals, when cases do contain references to the public, they are to hypothetical members of the public, not to specific third parties with special knowledge, such as the Wisconsin Ducks employee or the tax assessor here. *See, e.g., Camacho v. Trimble Irrevocable Trust*, 2008 WI App 112, ¶ 15, 313 Wis. 2d 272, 756 N.W.2d 596 ("The fence and shed 'significantly altered the character of the land in a manner which would give a reasonably diligent landowner notice of adverse possession.' A reasonable person viewing the fence would conclude that the [possessors] owned the property to the west of the fence." (citation omitted)). In sum, while we do not decide the issue, we have found nothing in adverse possession case law suggesting that, if a third party is aware of the subjective intent of the possessor, such knowledge affects how "the public" would view the possession.

"[t]here was no serious dispute at trial that the Somas used the [lakefront] strip. They filled it, they seeded it, they mowed it, they lounged on it and they kept others off of it. [And the] Wilcoxes continued these practices." That is, we understand the titleholders to concede that, but for the factors we have already discussed, the requirements of adverse possession were satisfied.

### *Conclusion*

¶ 25. For the reasons above, we conclude that the Wilcoxes established adverse possession of the disputed area. We therefore reverse and remand for further proceedings consistent with this opinion.

*By the Court.*—Orders reversed and cause remanded for further proceedings consistent with this opinion.